# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 |
| | : | Case No. 12-cv-00202 |
| PRODUCT(S): | : : | |
| INSTRUMENT PANEL CLUSTERS | : : | |
| | : | |
| This Document Relates to: | : : | Hon. Marianne O. Battani |
| ALL DEALERSHIP ACTIONS | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEALERSHIP PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH DEFENDANTS NIPPON SEIKI CO., LTD., N.S. INTERNATIONAL, LTD., AND NEW SABINA INDUSTRIES, INC. AND PROVISIONAL CERTIFICATION OF A SETTLEMENT CLASS

1

## TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES PRESENTED ................................................................... vii

PRELIMINARY STATEMENT ............................................................................... 1

THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT ......... 4

ARGUMENT ..................................................................................................... 6

I.     Preliminary Approval Should Be Granted Because The Proposed Settlement Falls Well Within The Range Of Possible Approval ............................................................ 7

     A.     The Settlement Agreement Achieves An Excellent Result For The Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation ..................................... 9

     B.     The Settlement Agreement Is The Result Of Arduous, Arm's-Length Negotiations Conducted By Highly Experienced Counsel ................................. 14

II.     The Proposed Settlement Class Should Be Provisionally Certified Pursuant To Rule 23 ......................................................................... 16

     A.     The Proposed Settlement Class Meets The Requirements Of Rule 23(a) .......... 17

          i.     The Proposed Settlement Class Is So Numerous That It Is Impracticable To Bring All Class Members Before The Court .............. 17

          ii.     Dealership Plaintiff Class Representatives And The Proposed Settlement Class Share Common Legal And Factual Questions ............. 18

          iii.     Dealership Plaintiff Class Representatives' Claims Are Typical Of The Claims Of The Members Of The Proposed Settlement Class .......... 20

          iv.     Settlement Class Counsel and Dealership Plaintiff Class Representatives Will Fairly and Adequately Protect The Interests Of The Proposed Settlement Class ....................................... 21

     B.     The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3) ...... 22

          i.     Common Questions of Law and Fact Predominate ................................. 22

          ii.     A Class Action Is The Superior Method To Adjudicate These Claims ..................................................................... 25

III.     Notice To The Class ......................................................................... 26

CONCLUSION ................................................................................................... 27

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Agretti v. ANR Freight Sys., Inc.*,
   982 F.2d 242 (7th Cir. 1992) ................................................................ 7

*In re Aluminum Phosphide Antitrust Litig.*,
   160 F.R.D. 609 (D. Kan. 1995) ............................................................ 19

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ........................................................ 18, 20

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).......................................................... 22, 24, 26

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
   133 S.Ct. 1184 (2013).......................................................... 17, 23

*In re Ampicillin Antitrust Litig.*,
   82 F.R.D. 652 (D.D.C. 1979).......................................................... 13

*Bacon v. Honda of America Mfg., Inc.*,
   370 F.3d 565 (6th Cir. 2004) ............................................................ 18

*Blades v. Monsanto Co.*,
   400 F.3d 562 (8th Cir. 2005) ............................................................ 24

*In re Blood Reagents Antitrust Litig.*,
   283 F.R.D. 222 (E.D. Pa. 2012)........................................................ 25

*Bowers v. Windstream Ky. East, LLC*,
   Civil Action No. 3:09-CV-440-H, 2013 U.S. Dist. LEXIS 157242
   (W.D. Ky. Nov. 1, 2013) ................................................................ 15

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ............................................... *passim.*

*Cason-Merenda v. VHS of Mich., Inc.*,
   Case No. 06-15601, 2013 U.S. Dist. LEXIS 131006
   (E.D. Mich. Sept. 13, 2013) .................................................. 16, 18, 20, 23

*In re Chambers Dev. Sec. Litig.*,
   912 F. Supp. 822 (W.D. Pa. 1995)...................................................... 10

*Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*,
   803 F.2d 878 (6th Cir. 1986) ............................................................ 8

*Comcast Corp. v. Behrend*,
   133 S.Ct. 1426 (2013).......................................................... 23

*In re Corrugated Container Antitrust Litig.*,
   MDL No. 310, 1981 WL 2093
   (S.D. Tex. Jan. 27, 1981) .................................................. 12, 13, 21

*Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) ............................................................................... 24

*Date v. Sony Elecs., Inc.*,
   Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095
   (E.D. Mich. July 31, 2013) ........................................................................ 18-19

*In re Delphi Corp. Sec. Derivatives & ERISA Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) .................................................................. 16

*Dillworth v. Case Farms Processing, Inc.*,
   No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446
   (N.D. Ohio Mar. 8, 2010) ................................................................................. 25

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
   130 F.R.D. 366 (S.D. Ohio 1990) .................................................................... 15

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841
   (N.D. Cal. June 5, 2006) .................................................................................. 19

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*,
   481 F.3d 1119 (9th Cir. 2007) ......................................................................... 11

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) ........................................................................... 26

*In re Foundry Resins Antitrust Litig.*,
   242 F.R.D. 393 (S.D. Ohio 2007) .......................................................... *passim.*

*Golden v. City of Columbus*,
   404 F.3d 950 (6th Cir. 2005) ........................................................................... 18

*Griffin v. Flagstar Bancorp, Inc.*,
   Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702
   (E.D. Mich. Dec. 12, 2013) ........................................................... 7, 15, 18, 20

*Hyland v. Homeservices of Am., Inc.*,
   Case No. 3:05-CV-612-R, 2008 U.S. Dist. LEXIS 90892
   (W.D. Ky. Nov. 6, 2008) .................................................................................. 17

*Int'l Union, UAW v. Ford Motor Co.*,
   Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471
   (E.D. Mich. July 13, 2006) ........................................................................ 8, 20

*IUE-CWA v. Gen. Motors Corp.*,
   238 F.R.D. 583 (E.D. Mich. 2006) .............................................................. 7, 14

*Karkoukli's, Inc. v. Dohany*,
   409 F.3d 279 (6th Cir. 2005) ........................................................................... 26

*Leonhardt v. ArvinMeritor, Inc.*,
   581 F. Supp. 2d 818 (E.D. Mich. 2008) .......................................................... 15

*Levva v. Medline Indus, Inc.*,
   716 F.3d 510 (9th Cir. 2013) ........................................................................... 23

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................................ *passim.*

*Marcus v. Dep't of Revenue*,
    206 F.R.D. 509 (D. Kan. 2002) ........................................................................ 22

*Miller v. Univ. of Cincinnati*,
    241 F.R.D. 285 (S.D. Ohio 2006) .................................................................... 17

*In re Packaged Ice Antitrust Litig.*,
    Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255
    (E.D. Mich. Feb. 22, 2011) .......................................................................... *passim.*

*In re Potash Antitrust Litig.*,
    159 F.R.D. 682 (D. Minn. 1995) ...................................................................... 23

*Powers v. Hamilton Cnty. Public Defender Comm.*,
    501 F.3d 595 (6th Cir. 2007) ............................................................................ 23

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    584 F. Supp. 2d 697 (M.D. Pa. 2008) .............................................................. 12

*Rankin v. Rots*,
    No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706
    (E.D. Mich. June 28, 2006) ............................................................................... 8

*Reed v. Advocate Health Care*,
    268 F.R.D. 573 (N.D. Ill. 2009) ...................................................................... 24

*In re Rent-Way Sec. Litig.*,
    305 F.Supp.2d 491 (W.D. Pa. 2003) ................................................................ 11

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ........................................................................ 11

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008) ......................................................... 22, 23, 24, 25

*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) ............................................................................ 21

*Sheick v. Auto Component Carrier LCC*,
    Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411
    (E.D. Mich. Oct. 18, 2010) ......................................................................... 14, 15

*In re Southeastern Milk Antitrust Litig.*,
    Master File No. 2:09-MD-1000, 2010 U.S. Dist. LEXIS 94223
    (E.D. Tenn. Sept. 7, 2010) ............................................................................... 17

*Stout v. J.D. Byrider*,
    228 F.3d 709 (6th Cir. 2000) ............................................................................ 20

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
    Case No. 1:01-CV-9000, 2001 U.S. Dist. LEXIS 26714
    (E.D. Ohio Oct. 19, 2001) ................................................................................ 8, 9

iv

*Thacker v. Chesapeake Appalachia, L.L.C.*,
  259 F.R.D. 262 (E.D. Ky. 2009) .................................................................. 15, 27

*UAW v. Gen. Motors. Corp.*,
  497 F.3d 615 (6th Cir. 2007) .............................................................................. 7

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
  219 F.R.D. 661 (D. Kan. 2004) ........................................................................ 25

*In re Uranium Antitrust Litig.*,
  617 F.2d 1248 (7th Cir. 1980) ......................................................................... 13

*In re Urethane Antitrust Litig.*,
  251 F.R.D. 629 (D. Kan. 2008) ........................................................................ 24

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) ............................................................................. 24

*In re Vitamins Antitrust Litig.*,
  209 F.R.D. 251 (D.D.C. 2002) .......................................................................... 24

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S.Ct. 2541 (2011) ................................................................................. 16, 17

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ............................................................................. 11

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ...................................................... 16, 17, 18, 22, 24

## Other Authorities

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE
  (2d ed. 1990) ..................................................................................................... 7

HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS
  (4th ed. 2005) ......................................................................................... 8, 14, 19

MANUAL FOR COMPLEX LITIGATION (SECOND) (1986) ......................................... 7

MANUAL FOR COMPLEX LITIGATION (THIRD) (1995) ................................... 8, 9, 15

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004) .................................. 7, 8, 16

NEWBERG ON CLASS ACTIONS (3d ed. 1992) ....................................................... 24

## Rules

15 U.S.C. § 1 ........................................................................................................ 2

Fed. R. Civ. P. 23 ........................................................................................ *passim.*

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S.Ct. 1184 (2013)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*Cason-Merenda v. VHS of Mich., Inc.*, Case No. 06-15601, 2013 U.S. Dist. LEXIS 131006 (E.D. Mich. Sept. 13, 2013)

*In re Corrugated Container Antitrust Litig.*, MDL No. 310, 1981 WL 2098 (S.D. Tex. Jan. 27, 1981)

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)

*Griffin v. Flagstar Bancorp, Inc.*, Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12, 2013)

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003)

*In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*Sheick v. Auto Component Carrier LCC*, Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

STATEMENT OF ISSUES PRESENTED

1. Whether Dealership Plaintiffs' settlement with Defendants Nippon Seiki Co., Ltd., N.S. International, Ltd., and New Sabina Industries, Inc. (collectively "Nippon Seiki") embodied in the Settlement Agreement entered into as of December 16, 2013 (the "Settlement Agreement"), and attached hereto as Exhibit "1" is fair, reasonable, and adequate and should be preliminarily approved;

2. Whether the Court should provisionally certify a Settlement Class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and appoint representatives and class counsel for the Settlement Class;

3. Whether the Court should stay the proceedings by Dealership Plaintiffs against Nippon Seiki in accordance with the terms of the Settlement Agreement; and

4. Whether the Court should authorize Dealership Plaintiffs to provide notice of the Settlement Agreement to Settlement Class Members (as defined in the Settlement Agreement)[1] at a later date, in a form and manner to be approved in advance by this Court.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

Dealership Plaintiffs, on behalf of themselves and all others similarly situated, by and through undersigned Settlement Class Counsel, respectfully submit this Memorandum in support of their Motion seeking preliminary approval of a settlement with Nippon Seiki and provisional certification of the proposed Settlement Class.

## PRELIMINARY STATEMENT

This multidistrict litigation arises from a conspiracy to fix the prices of Instrument Panel Clusters.  The first Dealership Plaintiff class action involving Instrument Panel Clusters was filed against Defendants in early 2012 following the announcement that Defendant Yazaki Corporation had agreed to plead guilty and pay a $470 million criminal fine for, among other things, participating in a conspiracy to fix the prices of Instrument Panel Clusters.

In February 2012, plaintiffs in the first-filed End-Payor class action alleging an Instrument Panel Cluster price-fixing conspiracy moved the Judicial Panel on Multidistrict Litigation to transfer the four then-pending End-Payor class actions making similar allegations to the Eastern District of Michigan for coordination and/or consolidation.  In June 2012, the Judicial Panel on Multidistrict Litigation granted the motion and transferred the actions to this Court for inclusion in the coordinated pretrial proceedings in *In re Automotive Parts Antitrust Litig.*, MDL No. 2311.

In March 2012, the Court entered an Order appointing the undersigned firms Interim Co-Lead Class Counsel and Interim Liaison Counsel for the Dealership actions in the Master Docket for MDL No. 2311.  *See* Doc. # 64.  In August 2012, this Court entered Case Management Order No. 3 in the Master Docket and clarified that the undersigned counsel – also Co-Lead Class Counsel and Interim Liaison Counsel in the coordinated Wire Harness Systems litigation – shall continue as Interim Co-Lead Class Counsel and Interim Liaison Counsel, respectively, for all cases related to, filed in, or transferred to the Court in MDL No. 2311, including this action.  *See*

1

Doc # 271.  In September 2012, this Court entered Case Management Order No. 1 for the

Instrument Panel Clusters cases, consolidating these cases and any subsequently filed Dealership

class actions concerning Instrument Panel Clusters.  *See* Doc. # 30 in 12-cv-00200.  Accordingly,

the undersigned counsel has represented the interests of the class of Dealership Plaintiffs in this

action, including in settlement negotiations with Nippon Seiki.  This proposed settlement is a

result of those efforts.

On November 8, 2012, Nippon Seiki Co., Ltd. agreed to plead guilty to a one-count

criminal information and to pay a $1 million criminal fine for participating in a combination and

conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to

rig bids for, and to fix, stabilize, and maintain the prices of, Instrument Panel Clusters sold to an

automobile manufacturer in the United States and elsewhere from at least as early as April 2008

and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.  *See*

Plea Agreement, *United States v. Nippon Seiki Co., Ltd.*, Case No. 2:12-cr-20569-GCS-PJK

(E.D. Mich. Nov. 8, 2012) (Doc. # 11).

The settlement reached with Nippon Seiki, the first in any of the automotive parts cases

before this Court,[2] is an early but substantial settlement.  (Ex. 1, Settlement Agreement).  It

provides guaranteed cash recovery of $1.44 million, plus accrued interest.  This cash recovery

standing alone is significant.  But the settlement is much more valuable to the Dealership

Plaintiffs because it also requires Nippon Seiki to provide early and comprehensive cooperation

in the form of, *inter alia*, attorney proffers, interviews, documents, and depositions, related to the

Instrument Panel Cluster conspiracy alleged in this action.

---

[2] The End-Payor Plaintiffs have also entered into a settlement with Nippon Seiki and are moving for
preliminary approval of their settlement contemporaneous with Dealership Plaintiffs.  The indirect
purchaser settlements are cumulatively six times larger than the fine Nippon Seiki agreed to pay to the
United States government.  See note 3 below.

A guaranteed all-cash payment of $1.44 million is a meaningful settlement and is a significant early achievement in this litigation.  The Settlement Fund is larger than the fine Nippon Seiki agreed to pay to the United States government pursuant to its guilty plea for antitrust violations in connection with the sale of Instrument Panel Clusters in the United States.[3] Courts have long recognized that "icebreaker" settlements of this nature provide invaluable assistance to antitrust plaintiffs.  *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ("*Linerboard*").  It also bears noting that the Settlement Agreement provides that Nippon Seiki's sales will remain in the case for purposes of computing the treble damages claim against the non-settling Defendants.  In other words, Dealership Plaintiffs and the proposed Settlement Class retain their ability to recover from the remaining Defendants the entire damages caused by the alleged conspiracy, even those attributable to Nippon Seiki, less only the amount paid by Nippon Seiki in settlement.

It is respectfully submitted that for all the reasons set forth herein, the settlement with Nippon Seiki is in the best interest of the proposed Settlement Class and merits the Court's preliminary approval.  Dealership Plaintiffs therefore request the entry of an Order:

1.  Preliminarily approving the Settlement;

2.  Provisionally certifying the proposed Settlement Class;

3.  Appointing representatives and class counsel for the Settlement Class;

4.  Staying the proceedings against Nippon Seiki in accordance with the terms of the Settlement Agreement; and

---

[3] *See* Plea Agreement, *United States v. Nippon Seiki Co., Ltd.*, Cases No. 2:12-cr-20569-GCS-PJK (E.D. Mich. Nov. 8, 2012) (Doc. # 11) ($1 million criminal fine). (Ex. 2, Plea Agreement).

5. Authorizing Dealership Plaintiffs to provide notice of the Settlement Agreement to class members at a later date, in a form and manner to be approved in advance by this Court.

## THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT

The Settlement Agreement with Nippon Seiki arises from extensive arm's length and good faith negotiations. Over 13 months, counsel participated in fact-gathering sessions and informational meetings, as well as extensive negotiations that took place including through telephone calls and multiple in-person meetings in New York.

The Settlement Class: The Settlement Agreement defines the Settlement Class as follows:

> All automobile dealers (but excluding Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, federal government entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities) that during the period from December 2002 up to and including the date of the dissemination of notice of settlement, as set forth in Paragraph 15 of this Agreement, (a) purchased an Instrument Panel Cluster manufactured by one of the Defendants or any current or former subsidiary or affiliate thereof, or any co-conspirator or (b) purchased vehicles containing Instrument Panel Clusters manufactured by one of the Defendants or any current or former subsidiary, affiliate or co-conspirator thereof.

Ex. 1, Settlement Agreement ¶ 10.

Settlement Amount: Nippon Seiki has agreed to pay a guaranteed all-cash payout of $1.44 million within 15 days after execution of the Settlement Agreement. *See id.* ¶ 22. The Settlement Amount shall be paid into an interest-bearing escrow account at a qualified bank. *See id.* ¶¶ 22, 23.

Cooperation: Nippon Seiki has agreed to provide extensive cooperation to the proposed Settlement Class that will immensely aid in the prosecution of antitrust claims against the remaining Defendants. A general summary of Nippon Seiki's cooperation obligations is

provided below.  The full extent of this cooperation is set forth in more detail in Section F the

Settlement Agreement.  Pursuant to its cooperation obligations, Nippon Seiki is required to:

    a.   identify all current and former employees, directors and officers who:  (i) were interviewed by any government entity in connection with the investigation into alleged antitrust violations with respect to Instrument Panel Clusters (the "Investigation"); (ii) appeared before the grand jury in the United States Department of Justice's ("DOJ") Investigation; and/or (iii) were disclosed to the DOJ as having knowledge or information related to the Investigation;

    b.   produce documents, including transactional documents,[4] documents provided to or seized by government entities relating to their Investigation, including sales data produced to the DOJ, and relevant non-privileged documents relating to Instrument Panel Clusters collected and reviewed by Nippon Seiki in connection with its internal investigation;

    c.   make its counsel available for meetings with Settlement Class Counsel to identify relevant evidence, including information given to the DOJ and transactional data;

    d.   use its best efforts to make available current and former directors, officers and/employees with knowledge of relevant facts for interviews, depositions, declarations/affidavits and trial testimony, if necessary; and

    e.   make qualified representatives available to authenticate and/or establish as business records documents and transaction and/or cost data produced, and, if not unduly

---

[4] The parties have entered into a Confidential Side Letter Agreement related to Nippon Seiki's production of certain transactional data under the cooperation provisions of the Settlement Agreement.  Upon the Court's request, the parties shall make the Confidential Side Letter Agreement available to the Court for *in camera* review.

burdensome, assist Settlement Class Counsel in establishing any other necessary foundation for admission into evidence.

Released Claims:  The Settlement Agreement releases only Nippon Seiki (and its parents, subsidiaries, and affiliates, and its current and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators) from all Settlement Class Member claims arising out of or relating in any way to any conduct alleged in the Complaint or any act or omission of Nippon Seiki, concerning Instrument Panel Clusters.  *See* Ex. 1, Settlement Agreement ¶ 20.  However, the release does not include:  (1) any claims made by direct purchasers of Instrument Panel Clusters as to such direct purchases; (2) any claims made by End-Payors that are indirect purchasers of Instrument Panel Clusters; (3) any claims made by any State as to government purchases and/or penalties; (4) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect or similar claim relating to purchases of Instrument Panel Clusters; (5) claims concerning any automotive part other than Instrument Panel Clusters; (6) claims under laws other than those of the United States relating to purchases of Instrument Panel Clusters made outside of the United States; and (7) claims for damages under the state or local laws of any jurisdiction other than an Indirect Purchaser State. *See id.*  Further, the Settlement Agreement provides that Nippon Seiki's sales shall remain in the continuing litigation against the non-settling Defendants, who remain jointly and severally liable for all damages caused by the conspiracy.  *See id.* ¶ 48.

## ARGUMENT

The Settlement Agreement is not only fair, reasonable, and adequate resulting from extensive, arm's length negotiations by experienced counsel, but also a thoughtfully conceived

resolution of the proposed Settlement Class's claims that maximizes their recovery and

guarantees early, significant cooperation by Nippon Seiki in the continued prosecution of

Dealership Plaintiffs' claims.

**I.      Preliminary Approval Should Be Granted Because The Proposed Settlement Falls
         Well Within The Range Of Possible Approval.**

It is well-established in the Sixth Circuit that there is an overriding public interest in

settling and quieting litigation, particularly class actions.  *See Griffin v. Flagstar Bancorp, Inc.*,

Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *6 (E.D. Mich. Dec. 12, 2013)

(citing *UAW v. Gen. Motors. Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (noting "the federal policy

favoring settlement of class actions")); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D.

583,593 (E.D. Mich. 2006.  "This policy applies with equal force whether the settlement is

partial, involving only some of the defendants, or complete."  *In re Packaged Ice Antitrust Litig.*,

Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255, at *44 (E.D. Mich. Feb. 22, 2011)

("*Packaged Ice*"); *see also Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992)

("In complex litigation with a plaintiff class, 'partial settlements often play a vital role in

resolving class actions.'" (quoting MANUAL FOR COMPLEX LITIGATION (SECOND) §

30.46 (1986)).  In fact, "settlement should be facilitated at as early a stage of the litigation as

possible." 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

PROCEDURE § 1522, at 225-26 (2d ed. 1990) (citing 1983 Advisory Committee Notes); *see also*

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.12 (2004) ("*Manual*") ("settlement should be

explored early in the case.").

Approval of a proposed class action settlement proceeds in two steps.  First, the court

grants preliminary approval to the settlement and provisionally certifies a settlement class.

Second, after notice of the settlement is provided to the class and the court conducts a fairness

hearing, the court may grant final approval of the settlement. *See Manual, 4th* § 21.63.

     A proposed settlement agreement should be preliminarily approved if "the preliminary

evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other

obvious deficiencies . . . and [the settlement] appears to fall within the range of possible

approval."  MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41 at 237 (1995); *see also Int'l*

*Union, UAW v. Ford Motor Co.*, Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471,

at *11 (E.D. Mich. July 13, 2006).  The district court's role in reviewing settlements "must be

limited to the extent necessary to reach a reasoned judgment that the agreement is not the product

of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement,

taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v Int'l*

*Union of Allied Industrial Workers of Am.*, 803 F.2d 878, 880 (6th Cir. 1986).  Courts adhere to

"an initial presumption of fairness when a proposed class settlement, which was negotiated at

arm's length by counsel for the class, is presented for court approval."  4 HERBERT B. NEWBERG

& ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2005) ("*Newberg*") (collecting

cases); *cf. Rankin v. Rots*, No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich.

June 28, 2006) ("[T]he only question . . . is whether the settlement, taken as a whole is so unfair

on its face as to preclude judicial approval.") (internal quotation marks omitted).

     In considering whether to grant preliminary approval, the court is not required at this

point to make a final determination of the adequacy of the settlement or to delve extensively into

the merits of the settlement.  *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,

Case No. 1:01-CV-9000, 2001 U.S. Dist. LEXIS 26714, at *17-18 (E.D. Ohio Oct. 19, 2001)

("*Sulzer Hip*").  These inquiries are reserved for the final approval stage of the class settlement

approval process.  Nor will any class member's substantive rights be prejudiced by preliminary

approval because the proposed preliminary approval is solely to provide authority for notifying

the class of the terms of the settlement agreement to set the stage for review of its final approval.

*Id.*; *Newburg* § 11.25.  Consequently, courts generally engage only in a limited inquiry to

determine whether a proposed settlement falls within the range of possible approval and thus

should be preliminarily approved.  *Sulzer Hip*, 2001 U.S. Dist. LEXIS 26714 at *17-18

(preliminary approval may be based on "informal presentations" because of "substantial judicial

processes that remain") (quoting Manual for Complex Litigation (Third) § 30.41, at 235

(1995)).

In evaluating whether a settlement is fair, reasonable and adequate, courts in the Sixth

Circuit consider a number of factors:

> (1) the likelihood of success on the merits weighed against the amount and form
> of relief in the settlement; (2) the complexity expense and likely duration of the
> litigation; (3) the opinions of class counsel and class representatives; (4) the
> amount of discovery engaged in by the parties; (5) the reaction of absent class
> members; (6) the risk of fraud or collusion; and (7) the public interest.  The Court
> may choose to consider only those factors that are relevant to the settlement at
> hand and may weigh particular factors according to the demands of the case.

*Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *46-47 (quotation marks and citations omitted).

A court is not required at the preliminary approval stage to determine whether it ultimately

will finally approve the settlement.  Nevertheless, as set forth in detail below, preliminary

consideration of the factors a court considers when evaluating the fairness of a settlement for

purposes of deciding whether to grant final approval supports this Court's granting preliminary

approval of the Settlement Agreement.

   **A.    The Settlement Agreement Achieves An Excellent Result For The Proposed
          Settlement Class, Particularly Given the Expense, Duration, and Uncertainty
          of Continued Litigation.**

Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (quoting *Linerboard*, 292 F. Supp. at 639); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("*Cardizem*") ("Moreover the complexity of this case cannot be overstated. Antitrust class actions are inherently complex"). Motions have already been vigorously contested, and the discovery process would be all the more complicated due to the unique issues that attend discovery against foreign parties.[5] Additionally, Nippon Seiki would assert various defenses, and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly with regard to damages, making the outcome of such trial uncertain for both parties. *See, e.g., Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *53-54 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracy as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages"). *Id.* Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

---

[5] Because Settlement Class Counsel may have to litigate against the other Defendants through trial and appeal, their duties to the Class preclude a more detailed discussion of their potential litigation risks.

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial are often overturned on appeal. *See, e.g., In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant). And, even if class members were willing to assume all of the litigation risks, the passage of time would introduce still more risks in terms of appeals and possible changes in the law that would, in light of the time value of money, make future recoveries less valuable than recovery today. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class"); *In re Rent-Way Sec. Litig.*, 305 F.Supp.2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Class than receiving the benefits of the proposed Settlement at this time"). Hence, "the certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

Against this background, an early settlement providing the substantial benefits afforded here represents an excellent result for the members of the proposed Settlement Class. Nippon Seiki's $1.44 million all-cash payment provides for significant compensation to the proposed Settlement Class that will be available earlier – perhaps years earlier – than would be the case if litigation against Nippon Seiki continued through trial and appeal. Moreover, courts have long

recognized that early settlements of this type create value beyond their direct pecuniary benefit to the class.  Early settlements can serve as "icebreaker" agreements, strengthening plaintiffs' hand in the litigation and encouraging future settlements. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *50-51 (noting "significant value" of icebreaker settlement); *Linerboard*, 292 F. Supp. 2d at 643; *In re Corrugated Container Antitrust Litig.*, MDL No. 310, 1981 WL 2093, at *16 (S.D. Tex. Jan. 27, 1981) ("*Corrugated Container*").

Of particular importance is the fact that the Settlement Agreement further requires Nippon Seiki to provide immediate and substantial cooperation to the Dealership Plaintiffs. Under the terms of the Settlement Agreement, Nippon Seiki is obligated to provide immediate and diligent cooperation to Dealership Plaintiffs' counsel by providing factual proffers, interviews, documents, depositions and trial testimony, among other things.  *See* Ex. 1, Settlement Agreement § F.  This cooperation is extremely valuable to the class.  The effective early-stage cooperation facilitated by the Settlement Agreement will afford the Dealership Plaintiffs access to documents and witnesses without protracted and expensive discovery – a significant class-wide benefit.  *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645, at *44 (E.D. Mich. Aug. 2, 2010) ("Particularly where, as here, there is the potential for a significant benefit to the class in the form of cooperation on the part of the settling Defendant, this Court is reluctant to refuse to consider the very preliminary approval that will trigger that cooperation."); *see also Linerboard*, 292 F. Supp. 2d at 643; *Corrugated Container*, 1981 WL 2093 at *16; *cf. In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008)  ("[T]he benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment").

The value of a first settlement is so great that first-settling defendants often obtain a substantial discount relative to the remaining defendants.  The *Linerboard* court, for example, approved a settlement with the first-settling defendant for less than one percent of sales and approximately one-third of the percentage of sales obtained from the other defendants.  Compare *Linerboard*, 292 F. Supp. 2d at 643 (approving icebreaker settlement for approximately 0.4% of sales), with *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 633 (E.D. Pa. 2004) (approving settlements with final two defendants for 1.6% and 2% of sales).  In accepting this discounted recovery from the first-settling defendants, the *Linerboard* court emphasized the "substantial" intangible benefit to the class of the icebreaker agreement.  292 F. Supp. 2d at 643.

Moreover, the proposed settlement is an excellent result in light of the fact that the cash settlement payment of $1,440,000 is *larger* than the fine Nippon Seiki agreed to pay to the United States government pursuant to its guilty plea for antitrust violations in connection with the sale of Instrument Panel Clusters in the United States.  *See* Ex. 1 and 2.

The Settlement Agreement also specifically provides that it does not purport to alter the non-settling Defendants' joint and several liability for the full damages caused by the alleged conspiracy, including all sales made by these Defendants.  *See* Ex. 1, Settlement Agreement ¶ 48. In this regard, the Settlement Agreement is similar to the icebreaker settlement approved in *Corrugated Container*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from the remaining defendants, less the actual amount of the initial settlement.  1981 WL 2093 at *17; *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to

joint and several liability).  Here too, the Dealership Plaintiffs will be able to pursue their full

damages, with no diminution other than deduction of the actual Nippon Seiki settlement amount.

 **B.**  **The Settlement Agreement Is The Result Of Arduous, Arm's-Length Negotiations Conducted By Highly Experienced Counsel.**

   This settlement is entitled to "an initial presumption of fairness" because it is the result of

arm's-length negotiations among experienced counsel.[6] *Newberg* § 11.41.  The judgment of

Settlement Class Counsel that the settlement is in the best interest of the proposed Settlement

Class "is entitled to significant weight, and supports the fairness of the class settlement*." Sheick

v. Auto Component Carrier LCC*, Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at

*51 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 597); *see also Cardizem*, 218

F.R.D. at 525 ("[I]n approving a proposed settlement, the court also considers the opinion of

experienced counsel as to the merits of the settlement.").  Courts give great weight to the

recommendation of experienced counsel for the parties in evaluating the adequacy of a

settlement.

   "Preliminary approval of a proposed settlement is based upon the court's familiarity with

the issues and evidence, as well as the arms-length nature of the negotiations prior to the

proposed settlement, ensuring that the proposed settlement is not illegal or collusive."  *Thacker

v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) (quoting *In re Dun &

Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990).  Here, the

Settlement Agreement is the result of lengthy and hard-fought negotiations between counsel

experienced in, among other things, complex antitrust and consumer class action litigation.  The

---

[6] There is no doubt that the counsel who negotiated the Settlement Agreement on behalf of both Dealership Plaintiffs and Nippon Seiki are highly experienced and capable.  *See* Motion to Appoint Interim Class Counsel for Automobile Dealer Indirect Purchasers and Memorandum in Support, *In re Automotive Wire Harness Sys. Antitrust Litig.*, Case No. 12-MD-02311 (E.D. Mich. Feb. 27, 2012) (Doc. # 5 and 6).

Settlement Agreement, in its initial form, was negotiated over a period of over 13 months by Settlement Class Counsel in a process that involved multiple in-person meetings and calls with counsel for Nippon Seiki.  In preparation for such negotiations, Settlement Class Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation and consulted extensively with experienced economists.

Thus, despite the fact that the Settlement Agreement comes at an early stage of this multi-district litigation, Settlement Class Counsel was well-informed as to the facts of the case and the strength of the claims asserted when the terms of the Settlement Agreement were initially negotiated.  *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *56 ("[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties.") (quotation marks and citation omitted); *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (same); *Sheick v. Auto. Component Carrier LLC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010) (same).

Moreover, these negotiations were adversarial and conducted in the utmost good faith.  "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."  *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *Bowers v. Windstream Ky. East, LLC*, Civil Action No. 3:09-CV-440-H, 2013 U.S. Dist. LEXIS 157242, at *5 (W.D. Ky. Nov. 1, 2013).  There is nothing in the course of the negotiations or the substance of the settlement that "disclose[s] grounds to doubt its fairness." *Manual, 3rd* § 30.41.

## II.     The Proposed Settlement Class Should Be Provisionally Certified Pursuant To Rule 23.

The Manual notes the propriety of certifying a class solely for purposes of settlement, *see Manual, 4th* § 21.632, and courts in this Circuit routinely provisionally approve a proposed settlement class before deciding plaintiffs' motion for class certification.   *See, e.g.*, *In re Delphi Corp. Sec. Derivatives & ERISA Litig.*, 248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008) (granting final approval to both ERISA and Securities settlement classes, noting the court's earlier, preliminary approval of the settlement classes granted prior to a hearing on defendants' motions to dismiss); *Cardizem*, 218 F.R.D. at 516-17, 530 (granting final approval of proposed settlement, noting its earlier preliminary approval of both the proposed settlement class and the proposed settlement agreement granted prior to class certification and prior to hearing on motions to dismiss).   A court may grant provisional certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b).   *See In re Packaged Ice Antitrust Litig.*, 2010 U.S. Dist. LEXIS 140235, at *27-28 (E.D. Mich. Sept. 2, 2010).

While the Supreme Court recently reiterated that a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011), "the requisite 'rigorous analysis' of the record and consideration of the merits must be focused on and limited to the question whether the Rule's requirements have been established." *Cason-Merenda v. VHS of Mich., Inc.*, Case No. 06-15601, 2013 U.S. Dist. LEXIS 131006, at *20-21 (E.D. Mich. Sept. 13, 2013) (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013). Permissible inquiry into the merits of plaintiffs' claims at the class certification stage is limited:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S.Ct. 1184, 1194-95 (2013) (citing *Dukes*, 131 S.Ct. at 2552 n.6). "In other words, district courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *In re Whirlpool Corp.*, 722 F.3d 838, 851-52 (internal quotation marks and citation omitted). Here, as demonstrated below, even under a "rigorous analysis," the requirements of Rule 23 of the Federal Rules of Civil Procedure are easily met.

## A.    The Proposed Settlement Class Meets The Requirements Of Rule 23(a).

Horizontal price fixing class actions are routinely certified in this District and elsewhere. Dealership Plaintiffs' allegations of "a per se violation of the antitrust laws are exactly the kind of allegations which may be proven on a class-wide basis through common proof." *In re Southeastern Milk Antitrust Litig.*, Master File No. 2:09-MD-1000, 2010 U.S. Dist. LEXIS 94223, at *35 (E.D. Tenn. Sept. 7, 2010). "Courts have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present." *Id.* at *33 (internal quotation marks and citations omitted). "As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 409 (S.D. Ohio 2007); *see also Hyland v. Homeservices of Am., Inc.*, Case No. 3:05-CV-612-R, 2008 U.S. Dist. LEXIS 90892, at *12 (W.D. Ky. Nov. 6, 2008).

### i.    *The Proposed Settlement Class Is So Numerous That It Is Impracticable To Bring All Class Members Before The Court.*

No magic number is required to satisfy the numerosity requirement of Rule 23(a)(1). *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006). A class representative need

only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005).  The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)."  *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403 (citing *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Here, the proposed Settlement Class consists of all automobile dealers who, from December 2002 up to and including the date of the dissemination of notice of settlement, as defined in the Settlement Agreement, (a) purchased an Instrument Panel Cluster manufactured by one of the Defendants or any current or former subsidiary or affiliate thereof, or any co-conspirator, or (b) purchased vehicles containing Instrument Panel Clusters manufactured by one of the Defendants or any current or former subsidiary, affiliate or co-conspirator thereof.  Since 2002, it is beyond dispute that automobile dealerships throughout the United States have purchased Instrument Panel Clusters and vehicles containing Instrument Panel Clusters.  Because of the large number of putative class members and their geographical distribution throughout the United States, joinder is highly impractical, if not impossible.

> **ii.** ***Dealership Plaintiff Class Representatives And The Proposed Settlement Class Share Common Legal And Factual Questions.***

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  While Rule 23(a)(2) speaks of questions of law or fact in the plural, "there need be only one common question to certify a class."  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d at 853 (6th Cir. 2013); *see also Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *22 (one common question of law or fact is sufficient); *Griffin v. Flagstar Bancorp Inc.*, 2013 U.S. Dist. LEXIS 173702 (same); *Date v. Sony Elecs.,*

*Inc.*, Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095, at *10 (E.D. Mich. July 31, 2013) (same).

This prerequisite is readily satisfied here because "antitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995). Thus, in price fixing cases, courts "have consistently held that the very nature of a conspiracy in an antitrust action compels a finding that common questions of law and fact exist." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006); *see also Newberg* § 3:10 at 278 ("[In an] antitrust action on behalf of purchasers who have bought defendants' products at prices that have been maintained above competitive levels by unlawful conduct, the courts have held that the existence of an alleged conspiracy or monopoly is a common issue that will satisfy the Rule 23(a)(2) prerequisite.").

Here, Dealership Plaintiffs have identified the following issues common to the proposed Settlement Class:

- Whether Nippon Seiki and its co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain, or stabilize the prices of Instrument Panel Clusters sold in the United States;

- Whether Nippon Seiki and its co-conspirators engaged in a combination and conspiracy to allocate customers and the markets for Instrument Panel Clusters sold in the United States;

- The duration of the illegal contract, combination, and/or conspiracy;

- Whether Nippon Seiki's and its co-conspirators' conduct resulted in an unlawful overcharge on the price of Instrument Panel Clusters; and

- Whether the unlawful overcharge on the price of Instrument Panel Clusters was passed-through to the indirect purchasers of Instrument Panel Clusters, and if so, the appropriate classwide measure of damages.

Any one of these issues would, standing alone, establish the requisite commonality under Rule 23(a)(2).

> ### iii.   *Dealership Plaintiff Class Representatives' Claims Are Typical Of The Claims Of The Members Of The Proposed Settlement Class.*

Third, Rule 23(a) requires typicality of the class representatives' claims. *See* Fed. R. Civ. P. 23(a)(3). "The [typicality] requirement is not onerous," *Int'l Union, UAW v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471 at *54, and courts liberally construe it. *See In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403. "In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violation by defendants." *Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *25 (quoting *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 405); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000); *In re Am. Med. Sys.*, 75 F.3d at 1082; *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at * 40-41. "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702, at *17-18 (quotation marks and citation omitted); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40 (same).

Because the Dealership Plaintiff Class representatives and the members of the proposed Settlement Class were all victims of the same conspiracy to fix prices, rig bids, and allocate the market and customers for Instrument Panel Clusters and seek the same relief, Rule 23(a)(3) is satisfied. *See Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *26 (finding typicality met where "the claims of the named Plaintiffs and those of the remaining members of the proposed class all arise from the same conspiracy and are based on the same theory of liability under the Sherman Act.") (internal quotation marks and citation omitted)); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *40-41 ("Because all Class Members' claims arise from . . . a conspiracy to

allocate markets in violation of the Sherman Act, their claims are based on the same legal theory

and the typicality requirement . . . is met").

>    **iv.**    ***Settlement Class Counsel and Dealership Plaintiff Class Representatives Will Fairly and Adequately Protect The Interests Of The Proposed Settlement Class.***

The final requirement of Rule 23(a) is that the representative parties "fairly and

adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Sixth Circuit has

articulated two criteria for determining adequacy of representation: "'1) [t]he representative must

have common interests with unnamed members of the class, and 2) it must appear that the

representatives will vigorously prosecute the interests of the class through qualified counsel.'"

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 407 (quoting *Senter v. Gen. Motors Corp.*,

532 F.2d 511, 525 (6th Cir. 1976)).  Dealership Plaintiff Class representatives submit that there

are no conflicts between them and the proposed Settlement Class because Dealership Plaintiff

Class representatives and members of the proposed Settlement Class (a) purchased an Instrument

Panel Cluster manufactured by one of the Defendants or any current or former subsidiary or

affiliate thereof, or any co-conspirator, or (b) purchased vehicles containing Instrument Panel

Clusters manufactured by one of the Defendants or any current or former subsidiary, affiliate or

co-conspirator thereof; that they have the same interest in establishing liability; and, that they all

seek damages for the ensuing overcharge.  *See In re Corrugated Container Antitrust Litig.*, 643

F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class

members are united in asserting a common right, such as achieving the maximum possible

recovery for the class, the class interests are not antagonistic for representation purposes"

(internal quotation marks and citation omitted)).  The Dealership Plaintiff Class representatives

and the members of the proposed Settlement Class also share a common interest in obtaining

Nippon Seiki's early and substantial cooperation in prosecuting the claims against the non-settling Defendants.

Rule 23(g) requires the Court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The proposed Settlement Class is represented by counsel with extensive experience in antitrust and class action litigation. They have vigorously prosecuted the class claims, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation").

### B.      The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3).

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008)). With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (internal citations omitted).

### i.      *Common Questions of Law and Fact Predominate.*

"Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *In re Whirlpool Corp.*, 722 F.3d at 859. Instead, "'[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such

proof obviates the need to examine each class member's individualized position.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. March 14, 2001)). Common questions need only predominate; they need not be dispositive of the litigation. *Id.* (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)); *cf. In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535-36 (holding issues regarding the amount of damages do not destroy predominance). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *19-20 (quoting *Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007)). As pertinent to Dealership Plaintiffs' request here to provisionally certify the proposed Settlement Class under Rule 23(b)(3), the Supreme Court very recently instructed that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc.*, 133 S.Ct. at 1191.[7]

Because the proposed Settlement Class's claims allege a single global conspiracy from which all proposed Settlement Class Members' injuries arise, issues common to the proposed Settlement Class Members – for example, the existence and scope of the alleged price-fixing

---

[7] The Supreme Court's recent decision in *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013), further underscores the appropriateness of class certification under Rule 23(b)(3) here. In *Comcast*, the Supreme Court found that the plaintiffs failed to establish that damages could be measured on a class-wide basis because only one of the plaintiffs' four theories of antitrust impact could be proved in a manner common to the class. 133 S.Ct. at 1429-31. In other words, under *Comcast*, plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability. *See Levva v. Medline Indus., Inc.*, 716 F.3d 510 (9th Cir. 2013). *Comcast* is not applicable here because all of the proposed Settlement Class's claimed damages – the overcharge suffered as a result of inflated Instrument Panel Cluster prices – stem from the Defendants' alleged price-fixing conspiracy.

conspiracy among Defendants, the market impact of Defendants' conspiracy, and the aggregate amount of damage suffered by the class as a result of the alleged antitrust violations – predominate over any individual questions, and therefore, class treatment of the claims is appropriate for purposes of this settlement. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); *see also In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 254 (D.D.C. 2002) ("as a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions") (quoting NEWBERG ON CLASS ACTIONS § 18.28 at 18-98 (3d ed. 1992)). This Circuit has also held "[p]reodminance is a test readily met in certain cases alleging . . . violations of the antitrust laws, because proof of the conspiracy is a common question that is thought to predominate over the other issues of the case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535 (quoting *Amchem*, 521 U.S. at 625).[8] Furthermore, here the evidence that will prove a violation as to one Settlement Class Member is common to the Class and will be sufficient to prove it as to all – the anticompetitive conduct is not dependent on the separate conduct of the individual Settlement Class Members. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255 at *43.

This is true even if there are individual state law issues, as long as the common issues still outweigh the individual ones, *e.g.*, as long as a common theory can be alleged as to liability and impact that can be pursued by the class. *See, e.g.*, *In re Whirlpool Corp.*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when

---

[8] Similarly, other courts have recognized that the existence and scope of an alleged antitrust conspiracy are matters susceptible to class-wide proof, and thus tend to support a finding that common issues predominate over individual ones as to at least the first element of an antitrust conspiracy claim. *See, e.g.*, *Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007); *Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001); *In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222, 234 (E.D. Pa. 2012); *Reed v. Advocate Health Care*, 268 F.R.D. 573, 581 (N.D. Ill. 2009); *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 634 (D. Kan. 2008); *Foundry Resins*, 242 F.R.D. at 408.

liability questions common to the class predominate over damages questions unique to class members." (internal quotation marks and citation omitted)); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability, fact that damages calculation may involve individualized issues does not defeat predominance). Issues common to the proposed Settlement Class predominate in this case – all Dealership Plaintiffs paid overcharges that were caused by the Defendants' price-fixing activities. The presence of these common issues of liability and impact predominates over any individual issues and strongly support provisional certification of the proposed Settlement Class.

### ii. *A Class Action Is The Superior Method To Adjudicate These Claims.*

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. *Dillworth v. Case Farms Processing, Inc.*, 2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8, 2010).

Courts consistently hold that class actions are a superior method of resolving antitrust claims like those alleged here. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 678 (D. Kan. 2004) (noting that individual litigation of antitrust claims would be "grossly inefficient, costly and time consuming"). Here, the interests of Settlement Class Members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. *Cardizem*, 200 F.R.D. at 325-26 (finding that class action is

superior because it ensures fair and efficient adjudication). Thousands of automobile dealerships purchased Instrument Panel Clusters or vehicles containing Instrument Panel Clusters during the Class Period; resolving these claims in the context of a class action would conserve both judicial and private resources and would hasten the class members' recovery. *See, e.g., In re Foundry Resins*, 242 F.R.D. at 411-12 ("Repeatedly litigating the same issues in individual suits would produce duplicate efforts, unnecessarily increase litigation costs, impose an unwarranted burden on this Court and other courts, and create a risk of inconsistent results).[9]

## III.   Notice To The Class.

Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." With regard to class action claims that are settled, Rule 23(e) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "[D]ue process does not require actual notice, but rather a good faith effort to provide actual notice." *Thacker*, 259 F.R.D. at 271-272. To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties." *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (citing *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005)).

Settlement Class Counsel anticipates additional settlements with Defendants in this action. Because it would be most cost-effective and efficient to disseminate notice of this settlement together with notice of other settlements, the parties have agreed to defer dissemination of notice. As set forth in the Settlement Agreement, "Automobile Dealership

---

[9] Another criterion of Rule 23(b)(3) is manageability. The Supreme Court has made clear that manageability need not be considered where, as here, a class is being certified for settlement purposes. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

Plaintiffs shall, at a time mutually agreed upon by the parties, submit to the Court for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Settlement Class members identified by Automobile Dealership Plaintiffs (the 'Notice Motion')." Ex. 1, Settlement Agreement ¶ 16.  The Notice Motion to be subsequently submitted to the Court for its approval shall include "a proposed form of, method for, and date of dissemination of notice which shall be agreed upon by Automobile Dealership Plaintiffs and Nippon Seiki before submission of the Motion."  *Id.*  Accordingly, with the Court's permission, Settlement Class Counsel will submit a proposed motion for authorization to disseminate notice at a later date to be mutually agreed-upon by the parties.

## CONCLUSION

For the foregoing reasons, Dealership Plaintiffs respectfully request that the motion for preliminary approval be granted and that the Court enter the attached Proposed Order:

1. Preliminarily approving the Settlement Agreement;

2. Provisionally certifying the proposed Settlement Class;

3. Appointing representatives and class counsel for the Settlement Class;

4. Staying the proceedings against Nippon Seiki in accordance with the terms of the Settlement Agreement; and

5. Authorizing Dealership Plaintiffs to provide notice of the Settlement Agreement to Settlement Class members at a later date, in a form to be approved in advance by this Court.

Dated: December 23, 2013                    Respectfully submitted,

                                            __/s/_____
                                                Gerard V. Mantese
                                                (Michigan Bar No. P34424)
                                                Brendan Frey
                                                (Michigan Bar No. P70893)
                                                David Hansma
                                                (Michigan Bar No. P71056)
                                                **Mantese Honigman Rossman
                                                    and Williamson, P.C.**
                                                1361 E. Big Beaver Road
                                                Troy, Michigan 48083
                                                Telephone: (248) 457-9200
                                                gmantese@manteselaw.com
                                                bfrey@manteselaw.com
                                                dhansma@manteselaw.com

                                                ***Interim Liaison Counsel for Dealership
                                                Plaintiffs and Proposed Settlement Class
                                                Liaison Counsel***

                                                Jonathan W. Cuneo
                                                Joel Davidow
                                                Daniel Cohen
                                                Victoria Romanenko
                                                **Cuneo Gilbert & LaDuca, LLP**
                                                507 C Street, N.E.
                                                Washington, DC 20002
                                                Telephone: (202) 789-3960
                                                jonc@cuneolaw.com
                                                joel@cuneolaw.com
                                                danielc@cuneolaw.com
                                                vicky@cuneolaw.com

                                                Don Barrett
                                                David McMullan
                                                Brian Herrington
                                                **BARRETT LAW GROUP, P.A.**
                                                P.O. Box 927
                                                404 Court Square
                                                Lexington, MS 39095
                                                Telephone:  (662) 834-2488
                                                Facsimile:   (662)834-2628
                                                dbarrett@barrettlawgroup.com
                                                bherrington@barrettlawgroup.com

dmcmullan@barrettlawgroup.com

Shawn M. Raiter
Paul A. Sand
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone:  (651) 312-6500
Facsimile:  (651) 312-6618
sraiter@larsonking.com
psand@larsonking.com

*Interim Co-Lead Class Counsel for Dealership*
*Plaintiffs and Proposed Settlement Class Counsel*