IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Case No. 12-cv-00202 |
| PRODUCT(S): INSTRUMENT PANEL CLUSTERS | |
| THIS DOCUMENT APPLIES TO: ALL AUTOMOBILE DEALERSHIP ACTIONS | Hon. Marianne O. Battani |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this 16th day of December, 2013 ("Execution Date") by and between Nippon Seiki Co., Ltd., N.S. International, Ltd., and New Sabina Industries, Inc. (collectively, "Nippon Seiki"), and Automobile Dealership Plaintiffs class representatives (collectively, "Automobile Dealership Plaintiffs"), both individually and on behalf of a class of end-payor indirect purchasers of Instrument Panel Clusters (the "Settlement Class") as more particularly defined in Paragraph 9 below.

WHEREAS, Automobile Dealership Plaintiffs are prosecuting the above *In Re Automotive Parts Litigation*, Master File No. 12-md-02311 (E.D. MI.), Case No. 12-cv-00202 (the "Action") on their own behalf and on behalf of the Settlement Class against, among others, Nippon Seiki;

WHEREAS, Automobile Dealership Plaintiffs allege that they were injured as a result of Nippon Seiki's participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, allocate markets and customers for Instrument Panel Clusters in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws

as set forth in Automobile Dealership Plaintiffs' Consolidated Amended Class Complaint (the "Complaint");

WHEREAS, Nippon Seiki denies Automobile Dealership Plaintiffs' allegations and would assert defenses to Automobile Dealership Plaintiffs' claims;

WHEREAS, arms-length settlement negotiations have taken place between Settlement Class Counsel (as defined below) and counsel for Nippon Seiki and this Agreement has been reached as a result of those negotiations;

WHEREAS, Automobile Dealership Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving the claims against Nippon Seiki, according to the terms set forth below, is in the best interest of Automobile Dealership Plaintiffs and the Settlement Class because of the payment of the Settlement Amount and the value of the Cooperation (as those terms are defined below) that Nippon Seiki has agreed to provide pursuant to this Agreement;

WHEREAS, this Action will continue against Defendants that are not Releasees (as defined below);

WHEREAS, Nippon Seiki, despite its belief that it is not liable for the claims asserted and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against Nippon Seiki, based on the allegations in the Action, as more particularly set out below;

WHEREAS, Nippon Seiki has agreed to provide Cooperation to Automobile Dealership Plaintiffs in the ongoing prosecution of this Action as set forth in the Agreement, and such

2

Cooperation will reduce Automobile Dealership Plaintiffs' substantial burden and expense associated with prosecuting this Action; and

WHEREAS, Automobile Dealership Plaintiffs recognize the benefits of Nippon Seiki's Cooperation and recognize that because of joint and several liability, the Agreement with Nippon Seiki does not impair Automobile Dealership Plaintiffs' ability to collect the full amount of damages to which they and the Settlement Class may be entitled to in the Action, including the damages attributable to Nippon Seiki's alleged conduct:

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Releasees, as defined below, and except as hereinafter provided, without costs as to Automobile Dealership Plaintiffs, the Settlement Class, or Nippon Seiki, subject to the approval of the Court, on the following terms and conditions:

A.     Definitions.

1.     "Cooperation" shall refer to those provisions set forth below in Paragraphs 30-36.

2.     "Cooperation Materials" means any information, testimony, Documents (as defined below) or other material provided by Nippon Seiki under the terms of this Agreement.

3.     "Defendant" means any party named as a defendant in this Action at any time up to and including the final approval date.

4.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, including without limitation, electronically stored information. A draft or non-identical copy is a separate document within the

meaning of this term.   For purposes of this Agreement, Document shall include all English translations in Nippon Seiki's custody, possession or control.

5.      "Automobile Dealership Plaintiff Class representatives" means each Automobile Dealership Plaintiff Class representative named in the Complaint, unless otherwise agreed in writing.

6.      "Indirect Purchaser States" means Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

7.      For purposes of this Agreement, "Instrument Panel Clusters" shall have the same meaning as set forth in the Complaint at the time this Agreement is executed.

8.      "Releasees" shall refer to Nippon Seiki and to all of their respective past and present, direct and indirect, parents, subsidiaries, and affiliates, including, but not limited to, the predecessors, successors and assigns of any of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing.  "Releasees" does not include any defendant in the Action other than Nippon Seiki.

9.      "Releasors" shall refer to Automobile Dealership Plaintiff Class representatives and the members of the Settlement Class, as defined in Paragraph 10, below, and to their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, parents, subsidiaries, affiliates, partners, insurers and all other persons, partnerships or corporations

4

with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executors, administrators and assigns of any of the foregoing.

      10.    For purposes of this Agreement, "Settlement Class" is defined as:

> All automobile dealers (but excluding Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, federal government entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities) that during the period from December 2002 up to and including the date that the Court enters an Order granting the Notice Motion, as set forth in Paragraph 16 of this Agreement, (a) purchased an Instrument Panel Cluster manufactured by one of the Defendants or any current or former subsidiary or affiliate thereof, or any co-conspirator or (b) purchased vehicles containing Instrument Panel Clusters manufactured by one of the Defendants or any current or former subsidiary, affiliate or co-conspirator thereof.

      11.    "Settlement Class Counsel" shall refer to the law firms of:

> Cuneo Gilbert & LaDuca, LLP
> 507 C Street, N.E.
> Washington, DC 20002
>
> Barrett Law Group, P.A.
> P.O. Box 927
> 404 Court Square
> Lexington, MS 39095
>
> Larson • King, LLP
> 2800 Wells Fargo Place
> 30 East Seventh Street
> St. Paul, MN 55101

      12.    "Settlement Class Member" means each member of the Settlement Class who has not timely elected to be excluded from the Settlement Class.

      13.    "Settlement Fund" shall be US $1,440,000 as specified in Paragraph 22 plus accrued interest on said deposits set forth in Paragraph 23.

B.    <u>Approval of this Agreement and Dismissal of Claims Against Nippon Seiki.</u>

14.     Automobile Dealership Plaintiffs and Nippon Seiki shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete, and final dismissal with prejudice of the Action as to the Releasees only.

15.     Within five (5) days after the execution of this Agreement, Automobile Dealership Plaintiffs shall inform the Court that the Automobile Dealership Plaintiffs and Nippon Seiki have agreed to settle the Action.   Subsequently, at a time mutually agreed upon by the parties, Automobile Dealership Plaintiffs shall submit to the Court a motion seeking preliminary approval of this Agreement (the "Motion").   The Motion shall include (i) the proposed form of an order preliminarily approving this Agreement; and (ii) a proposed form of order and final judgment.   The text of the foregoing items (i) and (ii) shall be agreed upon by Automobile Dealership Plaintiffs and Nippon Seiki before submission of the Motion.

16.     Automobile Dealership Plaintiffs shall submit to the Court at a time mutually agreed upon by the parties a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Settlement Class members identified by Automobile Dealership Plaintiffs (the "Notice Motion").   In order to mitigate the costs of notice, the parties shall endeavor, if practicable, to disseminate notice with any other settlements that are reached.   The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice which shall be agreed upon by Automobile Dealership Plaintiffs and Nippon Seiki before submission of the Motion.

17.     Automobile Dealership Plaintiffs shall seek, and Nippon Seiki will not object unreasonably to, the entry of an order and final judgment, the text of which Automobile Dealership

6

Plaintiffs and Nippon Seiki shall agree upon.  The terms of that order and final judgment will include, at a minimum, the substance of the following provisions:

        (a)     certifying the Settlement Class described in Paragraph 10, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class;

        (b)     as to the Action, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

        (c)     as to Nippon Seiki, directing that the Action be dismissed with prejudice and, except as provided for in this Agreement, without costs;

        (d)     reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement, as well as over Nippon Seiki, for the duration of its provision of Cooperation pursuant to this Agreement, to the United States District Court for the Eastern District of Michigan; and

        (e)     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Nippon Seiki shall be final.

    18.    This Agreement shall become final when (i) the Court has entered a final order certifying the Settlement Class described in Paragraph 10 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to Nippon Seiki against all Settlement Class Members and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to Nippon Seiki described in (i) hereof

has expired or, if appealed, approval of this Agreement and the final judgment as to Nippon Seiki have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.  On the date that Automobile Dealership Plaintiffs and Nippon Seiki have executed this Agreement, Automobile Dealership Plaintiffs and Nippon Seiki shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraphs 23(h), 41 or 42 of this Agreement.

19.    Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents and discussions associated with them, shall be deemed or construed to be an admission by Nippon Seiki, or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Nippon Seiki, to be used against Nippon Seiki, or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the Action, to be used against Nippon Seiki, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against Nippon Seiki.  Nothing in this Paragraph shall prevent Automobile Dealership Plaintiffs from using and/or introducing into evidence Cooperation Materials produced pursuant to Paragraphs 30-36, against any other defendants in any actions, to establish any of the above, subject to the terms and conditions set forth in the Protective Order in this Action, except as stated in paragraph 35(a) and (f).  Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by Nippon Seiki, shall be referred to, offered as evidence or received in evidence in any pending or future civil,

criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

C.      Release, Discharge, and Covenant Not to Sue.

20.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final, as set out in Paragraph 18 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 22 of this Agreement, into the Settlement Fund, and for other valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to any conduct alleged in the Complaint or any act or omission of the Releasees (or any of them), concerning Instrument Panel Clusters, including but not limited to any conduct alleged, and causes of action asserted or that could have been alleged or asserted, in any class action or other complaints filed in the Action (the "Released Claims"), provided however, that nothing herein shall release: (1) any claims made by direct purchasers of Instrument Panel Clusters as to such direct purchases; (2) any claims made by end-payors that are indirect purchasers of Instrument Panel Clusters; (3) any claims made by any State as to government purchases and/or penalties; (4) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost

goods, damaged or delayed goods, product defect or similar claim relating to Instrument Panel Clusters; (5) claims concerning any automotive part other than Instrument Panel Clusters; and (6) claims, under laws other than those of the United States relating to purchases of Instrument Panel Clusters made outside of the United States.; and, (7) claims for damages under the state or local laws of any jurisdiction other than an Indirect Purchaser State.  Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee as to, in whole or in part, any of the Released Claims unless the Agreement is, for any reason, not finally approved or terminated.

21.     In addition to the provisions of Paragraph 20 of this Agreement, Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits, as to their claims concerning Instrument Panel Clusters, conferred by § 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code.  Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 20 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that Nippon Seiki and Automobile Dealership Plaintiffs have agreed to release pursuant to Paragraph 20, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

10

D.    Settlement Amount.

22.    Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, Defendant Nippon Seiki shall pay the Settlement Amount of US $1,440,000 (the "Settlement Amount"). The Settlement Amount shall be paid into an escrow account in United States Dollars to be administered in accordance with the provisions of Paragraph 23 of this Agreement (the "Escrow Account") fifteen (15) days after execution of this Agreement.

23.    Escrow Account.

(a)    The Escrow Account will be established at  Huntington National Bank with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to Settlement Class Counsel and Nippon Seiki, such escrow to be administered under the Court's continuing supervision and control.

(b)    The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.

(c)    All funds held in the Escrow Account shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

(d)     Automobile Dealership Plaintiffs and Nippon Seiki agree to treat the Settlement Fund as being at all times a qualified settlement fund within the meaning of Treas. Reg. § 1.468B-1.   In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 23, including the relation-back election (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.   Such elections shall be made in compliance with the procedures and requirements contained in such regulations.   It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(e)     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the administrator shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)(l)).   Such returns (as well as the election described in Paragraph 23(d)) shall be consistent with Paragraph 23(d) and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 23(f) hereof.

(f)     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Nippon Seiki or any Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 23(d) through 23(f) (including,

12

without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 23(f) ("Tax Expenses")), shall be paid out of the Settlement Fund.

      (g)    Neither Nippon Seiki or any Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). Nippon Seiki shall not be responsible or have any liability therefor. Automobile Dealership Plaintiffs and Nippon Seiki agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 23(d) through 23(f).

      (h)    If this Agreement does not receive final Court approval, including final approval of the Settlement Class as defined in Paragraph 10, or if the Action is not certified as a class action for settlement purposes, then all amounts paid by Nippon Seiki into the Settlement Fund (other than costs expended or incurred in accordance with Paragraph 25), shall be returned to Nippon Seiki from the Escrow Account by the Escrow Agent along with any interest accrued thereon within thirty (30) calendar days.

24.    <u>Exclusions</u>.

Within ten (10) business days after the end of the period to request exclusion from the Settlement Class, Settlement Class Counsel will cause copies of timely requests for exclusion from the Settlement Class to be provided to counsel for Nippon Seiki. With respect to any potential Settlement Class Member who requests exclusion from the Settlement Class, Nippon Seiki reserves all of its legal rights and defenses, including, but not limited to, any defenses relating to whether the excluded Settlement Class Member is an indirect purchaser of any allegedly price fixed Instrument Panel Clusters and/or has standing to bring any claim.

      25.    <u>Payment of Expenses</u>.

Nippon Seiki agrees to permit use of a maximum of US $125,000 of the Settlement Fund towards notice to the class and the costs of administration of the Settlement Fund. The notice and administration expenses (up to the maximum of US $125,000) are not recoverable if this settlement does not become final or is terminated to the extent such funds have actually been expended or incurred for notice and administration costs. Other than as set forth in this Paragraph 25 and Paragraph 35 Nippon Seiki shall not be liable for any of the costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for Class administration and costs.

E.    <u>The Settlement Fund.</u>

      26.    Releasors shall look solely to the Settlement Fund for settlement and satisfaction against the Releasees of all Released Claims, and shall have no other recovery against Nippon Seiki or any Releasee.

      27.    After this Agreement becomes final within the meaning of Paragraph 18, the Settlement Fund shall be distributed in accordance with a plan to be submitted at the appropriate

time by Automobile Dealership Plaintiffs, subject to approval by the Court. In no event shall any Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration except as expressly otherwise provided in Paragraph 25 of this Agreement.

28.     Automobile Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses, as provided by Court Order. Nippon Seiki and the Releasees shall not be liable for any costs, fees, or expenses of any of Automobile Dealership Plaintiffs' or the Settlement Class' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

29.     Settlement Class Counsel's Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives

(a)     Settlement Class Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the settlement fund; plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action and incentive awards, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). Settlement Class Counsel reserve the right to make additional applications for fees and expenses incurred and reasonable incentive awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)     Subject to Court approval, Automobile Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses

including, but not limited to, attorneys' fees and past, current, or future litigation expenses. Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of expenses is reduced or reversed, or in the event the Agreement is rescinded or terminated pursuant to Paragraph 41 or Paragraph 42.

(c)     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, and incentive awards for class representatives to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

(d)     Neither Nippon Seiki nor any Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel of any Fee and Expense Award in the Action.

(e)     Neither Nippon Seiki nor any Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

F.     Cooperation.

16

30.     In return for the Release and Discharge provided herein, Nippon Seiki agrees to pay the Settlement Amount and provide Cooperation to Automobile Dealership Plaintiffs as set forth specifically below.

31.     Within five (5) business days of the Execution Date of this Agreement, counsel for Nippon Seiki shall provide Settlement Class Counsel with the identity of all current and former employees, directors and officers of Nippon Seiki who: (1) were interviewed and/or prosecuted by the United States Department of Justice ("DOJ"), the Japanese Fair Trade Commission, the European Commission, or any other government entity (collectively referred to herein as "Government Entities") in connection with alleged price-fixing, bid rigging and market allocation of Instrument Panel Clusters; (2) appeared before the grand jury in the DOJ's investigation into alleged antitrust violations with respect to Instrument Panel Clusters; and/or (3) were disclosed to the DOJ as having knowledge or information relating to the DOJ's investigation into alleged antitrust violations with respect to Instrument Panel Clusters.  Counsel for Nippon Seiki shall not be required to disclose to Settlement Class Counsel the specific Government Entities to which each such current or former employee, director or officer of Nippon Seiki was identified to or appeared before.

32.     Except as set forth therein, Nippon Seiki will: (i) produce all English translations, to the extent they exist, of the Documents described in Paragraph 32(b)-(c) within fifteen (15) business days after the Execution Date of this Agreement; and (ii) substantially complete the production of the following Documents in Nippon Seiki's possession, custody or control, set forth in sub-paragraphs (a)-(c) no later than ninety (90) calendar days after the Execution Date:

(a)     Transactional data, to the extent it exists in Nippon Seiki's electronic databases as of two years after the Execution Date of this Agreement, concerning Nippon Seiki's

17

bids for and sales of Instrument Panel Clusters to Original Equipment Manufacturers or other purchasers of Instrument Panel Clusters from January 1, 1998 to two years from the Execution Date of this Agreement, including the following information: (1) the date for each bid or sale; (2) the price submitted in each bid; (3) bids formulated but not submitted due to agreements or understandings with co-conspirators; (4) the final price of each sale; (5) the purchaser to whom each bid was submitted and each sale was made; (6) the model, model year(s) and brand of car for which each bid was submitted and each sale was made, as well as the country of sale of said cars; (7) the total amount of Instrument Panel Clusters sold in each sale; (8) the location where each bid was submitted and each sale was made; (9) the Nippon Seiki entity which submitted each bid; (10) the sale agreements for each sale; (11) the value engineering price adjustment made to the Instrument Panel Clusters sold in each sale; (12) any ancillary costs associated with each sale such as tooling costs; (13) the identity of any other bids submitted by competitors, including each winning bid; (14) adjustments made to each bid as it was being formulated; and (15) any other transactional data reasonably agreed to in writing between Nippon Seiki's counsel and Settlement Class Counsel. Except as provided herein, Nippon Seiki will only produce the data that exists as of the Execution Date of this Agreement and will not be obligated to do any analyses of the data for Settlement Class Counsel, outside of the interviews described in paragraph 35(b).   Nippon Seiki will provide any translations of the above data that may exist as of the Execution Date of this Agreement.   With respect to any electronic transactional data generated within the two years after the Execution Date of this Agreement, as referred to in Paragraph 32(a), Nippon Seiki shall have no on-going obligation to produce such data as it is generated.   However, Nippon Seiki will provide, in response to a written request from Settlement Class Counsel, a single production of electronic transactional data generated during the two years after the Execution Date of this Agreement, as it exists in Nippon

Seiki's electronic databases at the time of the request, within sixty (60) days of the receipt of such request. Nippon Seiki will preserve such transactional data until two years after the Execution date of this Agreement, as referred to in Paragraph 32(a). Nippon Seiki will produce data only from existing electronic transaction databases and will not be required to compile any data from individual invoices, individual personal computers or transactional Documents, except that, to the extent Nippon Seiki has not recorded or maintained electronic transaction data for any period between January 1, 1998 and two years from the Execution Date of this Agreement, then Nippon Seiki will use reasonable efforts to produce existing hard copy records of those sales transactions not recorded or maintained electronically in the existing electronic sales transaction databases.

(b)     Documents, if any, provided to or seized by Government Entities relating to their investigation into alleged competition violations with respect to Instrument Panel Clusters, to the extent they have not already been produced to Settlement Class Counsel pursuant to the Initial Discovery Plan entered in the Action, Doc# 31. Such documents will include any sales data produced to the DOJ.

(c)     Non-privileged documents concerning Instrument Panel Clusters, collected and reviewed in connection with Nippon Seiki's internal investigation, that are relevant to the allegations in the Complaint, or that have been identified by Nippon Seiki as relating to or concerning a communication, meeting, or agreement regarding Instrument Control Panels, by any employee, officer or director of Nippon Seiki with any employee, officer or director of another manufacturer or seller of Instrument Panel Clusters, but that were not provided to or seized by Government Entities.

33.     For all Documents withheld from production pursuant to (1) the attorney-client privilege; (2) the work product doctrine; (3) a protective order, or (4) any other applicable privilege

or doctrine protecting documents from disclosure, Nippon Seiki shall provide a privilege log, to the extent already in existence ("Existing Privilege Log"), describing such Documents in sufficient detail as to explain the nature of the privilege asserted or the basis of any other law or rule protecting such Documents.  No Document shall be withheld under claim of privilege if produced or made available to any Government entity.  If any Document protected by the attorney-client privilege, attorney work-product protection or any other privilege is accidentally or inadvertently produced under this Paragraph, upon notice by Nippon Seiki of such inadvertent production, the Document shall promptly be destroyed and/or returned to Nippon Seiki, and its production shall in no way be construed to have waived any privilege or protection attached to such Document.

34.     In the event that Nippon Seiki produces Documents or provides declarations or written responses to discovery to any Government Entity or party in the actions in Automotive Parts Antitrust Litigation, 12 md 02311 concerning or relating to this Action ("Relevant Production"), Nippon Seiki shall produce all such Documents, declarations or written discovery responses to Automobile Dealership Plaintiffs contemporaneously with making the Relevant Production to the extent such Documents, declarations or written discovery responses have not previously been produced by Nippon Seiki to Automobile Dealership Plaintiffs.  This agreement does not restrict Settlement Class Counsel from attending and/or participating in any depositions in Automotive Parts Antitrust Litigation, 12 md 02311.  Settlement Class Counsel may attend and/or participate in any depositions of Nippon Seiki witnesses in addition to the four depositions set forth in Paragraph 35(c), and Settlement Class Counsel and settlement class counsel for the End-Payors may ask questions for a combined total of three (3) hours at such deposition, provided that the time for participation of Settlement Class Counsel and settlement class counsel for the End-Payors shall not expand the time permitted for the deposition as may be provided by the Court, and Settlement Class

Counsel will not ask the Court to enlarge the time of any deposition noticed of a Nippon Seiki employee.

35.    In addition, Nippon Seiki shall provide additional Cooperation to Settlement Class Counsel as set forth in Paragraph 35(a)-(e).  All Cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided.   Any attorney proffers, witness interviews, or depositions provided pursuant to the below obligations, and any request for post-Execution Date transactional data Pursuant to Paragraph 32(a), shall be coordinated with, and occur at the same time as, the attorney proffers, witness interviews, depositions and transactional data production to be provided in a contemporaneous settlement of the End-Payor Actions, Master File No. 12 md 02311, Case No. 12 cv 00203 (the "End-Payor Actions").Settlement Class Counsel shall use their best efforts to select jointly with Settlement Class Counsel in the End-Payor Actions a total of four (4) persons for interviews and depositions, pursuant to Paragraphs 35(b) and 35(c).  To the extent that Settlement Class Counsel and settlement class counsel in the End-Payor Actions cannot agree on the selection of four (4) persons, each of Settlement Class Counsel and settlement class counsel in the End-Payor Actions shall be entitled to choose two (2) persons for such interviews and depositions.   The total number of interviews provided pursuant to Paragraph 35(b) of this Agreement shall be four (4), and the total number of depositions provided pursuant to Paragraph 35(c) of this Agreement shall be four (4).  Settlement Class Counsel may participate in all four (4) depositions and interviews regardless of the selection process.

(a)    Starting no later than fifteen (15) business days after Preliminary Approval of this Agreement, Nippon Seiki's counsel will make themselves available in the United States for three (3) meetings of one (1) business day each to provide an attorney's proffer jointly to Settlement Class Counsel and Settlement Class Counsel in the End-Payor Actions of facts known to them

21

regarding Documents, witnesses, meetings, communications, agreements with competitors, events, background information and any other relevant topics not covered by privilege or other protections available under any applicable statute or United States law, relating to the claims at issue in this Action, including any information given to the DOJ and transactions for sale of Instrument Panel Clusters inside and outside of the United States.  Unless otherwise requested by Settlement Class Counsel, the last meeting will take place no later than forty-five (45) days after Preliminary Approval of this Agreement.  Thereafter, Nippon Seiki's counsel will make themselves available for reasonable follow-up conversations in connection with the attorney's proffer, and will use reasonable efforts to respond to questions posed by Settlement Class Counsel.  It is understood that Nippon Seiki has no obligation to seek new or additional information or documents from any of its employees, officers or directors with respect to any follow-up conversations; however, Nippon Seiki will in good faith consider requests for new or additional information or documents, and will produce such information or documents, if appropriate, in its discretion.

Notwithstanding any other provision in this Agreement, Automobile Dealership Plaintiffs agree that they and Settlement Class Counsel shall maintain all statements made by Nippon Seiki's counsel as "Highly Confidential", as said designation is described in the Protective Order in this Action (Doc. 32); and that they shall not use the information so received for any purpose other than the prosecution of the Instrument Panel Cluster claims in the Automotive Parts Antitrust Litigation, 12- md-02311, except as stated in paragraph 35(a) and (f).  The parties and their counsel further agree that any statements made by Nippon Seiki's counsel in connection with and/or as part of this settlement, including the attorney's proffer(s) referred to in Paragraph 35(a), shall be governed by Federal Rule of Evidence 408.  Notwithstanding anything herein, Settlement Class Counsel may use information contained in such statements in the prosecution of the Instrument Panel Cluster claims

in Automotive Parts Antitrust Litigation, 12-md-02311, and rely on such information to certify that, to the best of Settlement Class Counsel's knowledge, information and belief, such information has evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.  Automobile Dealership Plaintiffs may also employ knowledge that they have obtained from Nippon Seiki, but not information concerning competitor contacts, in MDL 2311, in cases in addition to Instrument Panel Clusters, provided they do not attribute said information to Nippon Seiki or quote any information provided by Nippon Seiki or employ such information against Nippon Seiki.

> (b)     Upon reasonable notice after preliminary approval, Nippon Seiki shall make its best efforts to make available for an interview with Settlement Class Counsel and Settlement Class Counsel in the End-Payor Actions and/or experts at a mutually agreed upon location in the United States, up to a total of four (4) persons who Settlement Class Counsel and Settlement Class Counsel in the End-Payor Actions select, and which may consist of current or former directors, officers, and/or employees of Nippon Seiki whom Settlement Class Counsel, in consultation with counsel for Nippon Seiki, reasonably and in good faith believe possess knowledge of facts or information that would reasonably assist Automobile Dealership Plaintiffs in the prosecution of the Instrument Panel Cluster claims in Automotive Parts Litigation, 12-md-02311.  Interviews shall each be limited to a total of eight (8) hours over one day.  To the extent that the person to be interviewed requests an interpreter, interviews shall be limited to a total of ten (10) hours, which would occur over two (2) consecutive days at the request of the interviewee.  Upon reasonable notice by Settlement Class Counsel, Nippon Seiki shall use its best efforts to make available by telephone the persons who have been interviewed as set forth in this Paragraph to answer follow-up questions for a period not to exceed two (2) hours.  If the interviews take place outside of Japan,

Settlement Class Counsel shall reimburse Nippon Seiki for half of the reasonable travel expenses incurred by any such person in connection with their interview, but in no event shall Settlement Class Counsel be responsible for reimbursing such persons for time or services rendered. Such travel expenses may include economy airfare, but not airfare for business or first class seats. Reimbursable expenses shall not exceed $1,500 per interviewee. If the interview and the below-described deposition occur during the same trip, the above-limitations will apply to that trip.

(c) Upon reasonable notice, Nippon Seiki shall, at Settlement Class Counsel's request, make its best efforts to make available to appear for deposition (i) a total of up to four (4) persons who Settlement Class Counsel and Settlement Class Counsel in the End-Payor Actions select from among the same four (4) persons who have been chosen for interviews pursuant to Paragraph 35(b), and to provide (ii) up to four (4) declarations/affidavits from the same persons who have been chosen for interviews and depositions pursuant to Paragraph 35(b) and Paragraph 35(c). If Nippon Seiki is unable to make those same persons available for deposition or declaration then Settlement Class Counsel may select a substitute deponent or declarant. Each deposition shall be conducted at a mutually agreed upon location in the United States, and shall each be limited to a total of eight (8) hours over one day. To the extent that the person to be deposed requests an interpreter, the deposition shall be limited to a total of ten (10) hours, five (5) of which would occur over two (2) consecutive days at the request of the deponent. Written notice by Settlement Class Counsel to Nippon Seiki's counsel shall constitute sufficient service of notice for such depositions. If the depositions take place outside Japan, Settlement Class Counsel shall reimburse Nippon Seiki for half of the reasonable travel expenses incurred by any such person in connection with their deposition, but in no event shall Settlement Class Counsel be responsible for reimbursing such persons for time or services rendered. Such travel expenses may include economy airfare, but not

airfare for business or first class seats. Reimbursable expenses shall not exceed $1,500 per deponent. If the deposition and interview occur during the same trip, the above-limitations will apply to that trip. If Settlement Class Counsel request declarations/affidavits, such affidavits and declarations will be provided in English.

(d)     Upon reasonable notice, Nippon Seiki shall make its best efforts to provide, for trial testimony, if necessary, up to two (2) persons from among the persons who have been interviewed or deposed pursuant to Paragraphs 35(b) and 35(c), which may consist of current or former directors, officers, and/or employees of Nippon Seiki whom Settlement Class Counsel, in consultation with counsel for Nippon Seiki, reasonably and in good faith believe possess knowledge of facts or information that would reasonably assist Automobile Dealership Plaintiffs in the prosecution of the Instrument Panel Cluster claims in Automotive Parts Litigation, 12-md-02311. Settlement Class Counsel shall reimburse Nippon Seiki for half of the reasonable travel expenses incurred by any such person in connection with their trial testimony, but in no event shall Settlement Class Counsel be responsible for reimbursing such persons for time or services rendered. Such travel expenses may include economy airfare, but not airfare for business or first class seats. Reimbursable expenses shall not exceed $1,500 per person.

(e)     In addition to its Cooperation obligations set forth herein, Nippon Seiki agrees to produce through affidavit(s) or declaration(s) and/or at trial, if necessary, in Settlement Class Counsel's discretion, representatives qualified to authenticate and/or establish as business records any of Nippon Seiki's Documents and transaction and/or cost data produced or to be produced, and to the extent possible, any Documents produced by Defendants or third-parties in this Action. In addition, if not unduly burdensome, Nippon Seiki agrees to produce through affidavit(s)

or declaration(s) and/or at trial, if necessary, in Settlement Class Counsel's discretion, representatives qualified to establish any other necessary foundation for admission into evidence.

(f)     Automobile Dealership Plaintiffs and Settlement Class Counsel agree they will not use the information provided by Nippon Seiki or the Releasees or their representatives under this Paragraph for any purpose other than the prosecution of the Instrument Panel Cluster claims in the Automotive Parts Litigation, 12-md-02311, and will use it in the litigation consistent with the Protective Order,  and will not use it beyond what is reasonably necessary for the prosecution of the actions in 12-md-02311 or as otherwise required by law.  All Documents and other information provided pursuant to this Agreement will be deemed "Highly Confidential", as said designation is described in the Protective Order in this Action (Doc.  32), and subject to the Protective Order entered in the Action as if they had been produced in response to discovery requests and so designated.  Automobile Dealership Plaintiffs may also employ knowledge that they have obtained from Nippon Seiki, but not information concerning competitor contacts, in MDL 2311, in cases in addition to Instrument Panel Clusters, provided they do not attribute said information to Nippon Seiki or quote any information provided by Nippon Seiki or employ such information against Nippon Seiki.

36.     Nippon Seiki's obligations to provide Cooperation shall not be affected by the Release set forth in this Settlement Agreement.  Unless this Agreement is rescinded, disapproved, or otherwise fails to take effect, Nippon Seiki's obligations to provide Cooperation under this Agreement shall continue only until otherwise ordered by the Court, or the date that final judgment has been entered in the Action against all Defendants.

37.     In the event that this Agreement fails to receive final approval by the Court as contemplated in Paragraphs 14-18 hereof, including final approval of "the Settlement Class" as

defined in Paragraph 10, or in the event that it is terminated by either party under any provision herein, the parties agree that neither Automobile Dealership Plaintiffs nor Settlement Class Counsel shall be permitted to introduce into evidence against Nippon Seiki, at any hearing or trial, or in support of any motion, opposition or other pleading in the Action or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of this Action, any deposition testimony or any documents provided by Nippon Seiki and/or the Releasees, their counsel, or any individual made available by Nippon Seiki pursuant to Cooperation (as opposed to from any other source or pursuant to a court order).  Notwithstanding anything contained herein, Automobile Dealership Plaintiffs and the Settlement Class are not relinquishing any rights to pursue discovery against Nippon Seiki in the event that this Agreement fails to receive final approval by the Court as contemplated in Paragraphs 14-18 hereof, including final approval of "the Settlement Class" as defined in Paragraph 10, or in the event that it is terminated by either party under any provision herein.

38.     Nippon Seiki need not respond to formal discovery requests from Automobile Dealership Plaintiffs or otherwise participate in the Action during the pendency of the Agreement. Other than to enforce the terms of this Agreement, neither Nippon Seiki nor Automobile Dealership Plaintiffs shall file motions against the other, in this Action, during the pendency of the Agreement.

39.     Nippon Seiki and Automobile Dealership Plaintiffs agree not to disclose publicly or to any other person the terms of this Agreement until this Agreement is submitted to the Court for Preliminary Approval.

40.     If Settlement Class Counsel believes that any current or former employee, officer, or director of Nippon Seiki has refused to cooperate under the terms of this Agreement, Settlement

Class Counsel may seek an Order from the Court compelling such current or former employee, officer or director of Nippon Seiki to provide discovery.

G.    Rescission if this Agreement is Not Approved or Final Judgment is Not Entered.

41.    If the Court refuses to approve this Agreement or any part hereof, including if the Court does not certify a settlement class in accordance with the specific Settlement Class definition set forth in this Agreement, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 18 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then Nippon Seiki and Automobile Dealership Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 54. A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

42.    Notwithstanding any other provisions of this Agreement, Nippon Seiki reserves the right to rescind in its entirety this Settlement Agreement if there is not a final approval at or about the same time as the final approval of this Agreement of a similar, contemporaneous agreement among Nippon Seiki and the Plaintiffs and Class in the End-Payor Actions.

43.    In the event that this Agreement does not become final, or this Agreement otherwise is terminated pursuant to Paragraph 41 or Paragraph 42, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (including interest earned thereon) shall be returned forthwith to Nippon Seiki less only

disbursements made in accordance with Paragraph 25 of this Agreement. Nippon Seiki expressly reserves all of their rights and defenses if this Agreement does not become final.

44.    Further, and in any event, Automobile Dealership Plaintiffs and Nippon Seiki agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Nippon Seiki, or the Releasees, to be used against Nippon Seiki, or of the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, or by any person or entity in any other action, to be used against Nippon Seiki and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against Nippon Seiki. Nothing in this Paragraph shall prevent Automobile Dealership Plaintiffs from using Cooperation Materials produced pursuant to Paragraphs 30-36, against any other defendants in any actions relating to Instrument Panel Clusters, to establish any of the above.

45.    This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement as well as cooperation by Nippon Seiki.

46.    The parties to this Agreement contemplate and agree that, prior to final approval of the settlement as provided for in Paragraphs 14-18 hereof, appropriate notice 1) of the settlement; and 2) of a hearing at which the Court will consider the approval of this Settlement Agreement, will be given to Settlement Class Members.

H.    Miscellaneous.

29

47.     Nippon Seiki shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

48.     This Agreement does not settle or compromise any claim by Automobile Dealership Plaintiffs or any Settlement Class Member asserted in the Complaint or, if amended, any subsequent Complaint, against any Defendant or alleged co-conspirator other than the Releasees.  All rights against such other defendants or alleged co-conspirators are specifically reserved by Automobile Dealership Plaintiffs and the Settlement Class.  All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than the Releasees, for sales made by Nippon Seiki and Nippon Seiki's illegal conduct are specifically reserved by Automobile Dealership Plaintiffs and Settlement Class Members.  Nippon Seiki's sales to the Class and its alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than the Releasees.

49.     The United States District Court for the Eastern District of Michigan shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Automobile Dealership Plaintiffs and Nippon Seiki.  This Agreement shall be governed by and interpreted according to the substantive laws of the state of Michigan without regard to its choice of law or conflict of laws principles.  Nippon Seiki will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.

50.    This Agreement constitutes the entire, complete and integrated agreement among Automobile Dealership Plaintiffs and Nippon Seiki pertaining to the settlement of the Action against Nippon Seiki, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations and discussions, either oral or written, between Automobile Dealership Plaintiffs and Nippon Seiki in connection herewith.  This Agreement may not be modified or amended except in writing executed by Automobile Dealership Plaintiffs and Nippon Seiki, and approved by the Court.

51.    This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Automobile Dealership Plaintiffs and Nippon Seiki.  Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Automobile Dealership Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors.  The Releasees (other than Nippon Seiki entities which are parties hereto) are third party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

52.    This Agreement may be executed in counterparts by Automobile Dealership Plaintiffs and Nippon Seiki, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

53.    Neither Plaintiffs nor Nippon Seiki shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

54.    Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile, or electronic mail or letter by

31

overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

55.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: December 16, 2013

JONATHAN W. CUNEO
JOEL DAVIDOW
DANIEL COHEN
VICTORIA ROMANENKO
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960

DON BARRETT
DAVID MCMULLAN
BRIAN HERRINGTON
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488

SHAWN M. RAITER
LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500

A. PAUL VICTOR

JEFFREY L. KESSLER
MOLLY DONOVAN
JAMES F. LERNER
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

FRED K. HERRMANN (P49519)
KERR, RUSSELL AND WEBER, PLC
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
Facsimile: (313) 961-0388

*Attorneys for Nippon Seiki, Co., Ltd., N.S.
International, Ltd., New Sabina Industries, Inc.*

54.    Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile, or electronic mail or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

55.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: December 16, 2013

JONATHAN W. CUNEO
JOEL DAVIDOW
DANIEL COHEN
VICTORIA ROMANENKO
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960


DON BARRETT
DAVID MCMULLAN
BRIAN HERRINGTON
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488

SHAWN M. RAITER
LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500

32

54.    Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile, or electronic mail or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

55.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: December 16, 2013

JONATHAN W. CUNEO
JOEL DAVIDOW
DANIEL COHEN
VICTORIA ROMANENKO
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960

DON BARRETT
DAVID MCMULLAN
BRIAN HERRINGTON
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488

SHAWN M. RAITER
LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500

32

A. PAUL VICTOR
JEFFREY L. KESSLER
MOLLY DONOVAN
JAMES F. LERNER
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700

FRED K. HERRMANN (P49519)
KERR, RUSSELL AND WEBER, PLC
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
Facsimile: (313) 961-0388

*Attorneys for Nippon Seiki, Co., Ltd., N.S.
International, Ltd., New Sabina Industries, Inc.*

33