**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                           MASTER FILE NO. 12-md-02311

_____

In Re: Instrument Panel Clusters              HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

Dealership Actions                             2:12-cv-00202
End-Payor Actions                              2:12-cv-00203

_____/

**OPINION AND ORDER GRANTING IN PART AND**
**DENYING IN PART DEFENDANTS' COLLECTIVE**
**MOTION TO DISMISS INDIRECT PURCHASER ACTIONS**

Before the Court is Defendants' Collective Motion to Dismiss End-Payor Plaintiffs'

Consolidated Amended Complaint and the Automobile Dealer Plaintiffs' Consolidated

Class Complaint (Doc. Nos. 42 (sealed) and 43 (redacted) in 12-202 and Doc. Nos. 44

(sealed) and 45 (redacted) in 12-203).  Automobile Dealer Plaintiffs and End-Payor

Plaintiffs (collectively "Indirect Purchaser Plaintiffs" or "IPPs") bring class actions against

Defendants under federal and state law based on Defendants' alleged conspiracy to rig

bids, fix prices, and allocate the market for Instrument Panel Clusters ("IPCs").

Although the IPPs filed separate complaints,  Defendants analyze the complaints

together for purposes of this motion, and the Court does the same.

The Court heard oral argument on the motion on November 13, 2013, and at the conclusion of the argument, took this matter under advisement.  For the reasons that follow, the motion is **GRANTED in part** and **DENIED in part**.

## I.  INTRODUCTION

On February 7, 2012, the United States Judicial Panel on Multidistrict Litigation ("Judicial Panel" or "Panel")  transferred actions sharing "factual questions arising out of an alleged conspiracy to inflate, fix, raise, maintain, or artificially stabilize prices of automotive wire harness systems" to the Eastern District of Michigan.  (12-md-02311, Doc. No. 2).  In its transfer order, the Judicial Panel noted that the majority of cases were pending in the Eastern District, as was the first filed action, that several defendants were located in this district, and that a related criminal investigation was underway in this district.  (Id.)  The Panel determined that centralizing litigation in this District would eliminate duplicative discovery, prevent inconsistent pretrial rulings and conserve resources.  (Id.)   After complaints were filed alleging conspiracies to fix the prices of three additional component parts, the Judicial Panel determined that including all actions in MDL No. 2311 would result in the most efficient handling of the case.  The Judicial Panel noted the existence of similar conspiracies with overlapping defendants arising from the same government investigation as well as an overlap of parties and counsel.  The additional component part cases were transferred to this Court for coordinated pretrial proceedings, and In re: Automotive Wire Harness Systems Antitrust Litigation was renamed In re: Automotive Parts Antitrust Litigation.  (Doc. No. 117 in 12-2311).  There are now twenty-nine component part cases pending.

2

On January 15, 2013, Automobile Dealer Purchaser Plaintiffs filed their Consolidated Class Complaint ("CCC" Doc. No. 30 in 12-202 (sealed)), and End-Payor Plaintiffs filed their Consolidated Amended Complaint ("CAC" Doc. Nos. 32 in 12-203 (sealed) and 33 (redacted)).   Defendants assert that the Indirect Purchaser Plaintiffs' complaints fail to meet the minimum requirements for pleading an antitrust conspiracy, that they lack standing to bring antitrust claims, and, their state law claims must be dismissed on a variety of grounds.

## II. FACTUAL ALLEGATIONS

Defendants are manufacturers or sellers of Instrument Panel Clusters that are manufactured or sold in the United States.  In their motion, they challenge the complaints alleging conspiracy to fix prices on products filed by two different groups of plaintiffs–automobile dealers and end-payors.   The Automobile Dealer Plaintiffs ("ADPs"), including Martens Cars of Washington, Inc., Landers Auto Group No. 1, Inc. d/b/a Landers Toyota, Hammett Motor Company, Inc., Superstore Automotive, Inc., Lee Pontiac-Oldsmobile-GMC Truck, Inc., Westfield Dodge City, Inc., V.I.P. Motor Cars Ltd., Desert European Motorcars, Ltd., Landers McLarty Fayetteville TN, LLC, Dale Martens Nissan Subaru, Inc., Green Team of Clay Center Inc., McGrath Automotive Group, Inc., Table Rock Automotive, Inc. d/b/a Todd Archer Hyundai, Archer-Perdue, Inc. d/b/a Archer-Perdue Suzuki, Lee's Summit Chrysler Dodge Jeep Ram, Bonneville and Son, Inc., Holzhauer Auto and Truck Sales, Inc., Pitre, Inc. d/b/a Pitre Buick GMC, Patsy Lou Chevrolet, Inc., John Greene Chrysler Dodge Jeep, LLC, SLT Group II, Inc. d/b/a Planet Nissan Subaru of Flagstaff, Herb Hallman Chevrolet, Inc. d/b/a Champion Chevrolet, Charles Daher's Commonwealth Motors, Inc. d/b/a Commonwealth Chevrolet,

3

Commonwealth Kia, Commonwealth Honda, Commonwealth Volkswagen, Inc. d/b/a Commonwealth Volkswagen, Commonwealth Nissan, Inc. d/b/a Commonwealth Nissan, Ramey Motors, Inc., Thornhill Superstore, Inc. d/b/a Thornhill GM Superstore, Dave Heather Corporation d/b/a Lakeland Toyota Honda Mazda Subaru, Central Salt Lake Valley GMC Enterprises, LLC d/b/a Salt Lake Valley Buick GMC, Capitol Chevrolet Cadillac, Inc., Capitol Dealerships, Inc. d/b/a Capitol Toyota, Beck Motors, Inc., Stranger Investments d/b/a Stephen Wade Toyota, John O' Neil Johnson Toyota, LLC d/b/a Hartley Buick GMC Truck, Inc., Lee Oldsmobile-Cadillac, Inc. d/b/a Lee Honda, Lee Auto Malls-Topsham, Inc. d/b/a Lee Toyota of Topsham, Landers of Hazelwood, LLC d/b/a Landers Toyota of Hazelwood, Cannon Chevrolet-Oldsmobile-Cadillac-Nissan, Inc. Cannon Nissan of Jackson, LLC, filed this Consolidated Class Complaint on behalf of themselves and all others similarly situated.  In their proposed class action, Automobile Dealer Plaintiffs allege that the manufacturers and suppliers of Instrument Panel Clusters engaged in "a lengthy conspiracy to suppress and eliminate competition. . .by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of these products. . . ."  (Doc. No. 30 at ¶ 1).      In their Corrected Consolidated Amended Class Action Complaint (Doc. No. 33 in 12-203), End-Payor Plaintiffs ("EPPs") Tom Halverson, Stephanie Petras, Sophie O'Keefe-Zelman, Melissa Barron, John Hollingsworth, Meetesh Shah, Gary Arthur Herr, Michael Tracy, Jane Taylor, Jennifer Chase, Darrel Senior, AGA Realty LLC, James Marean, Ron Blau, Roger Olson, Susan Olson, Nilsa Mercado, Darcy Sherman, Curtis Gunnerson, David Bernstein, Ellis Winston McInnis, Thomas Wilson, Lauren Primos, Robert Klingler, Jessica DeCastro, Virginia Pueringer, Nathan Croom, Richard Stoehr, Edward Muscara, Michael Wick, Ian

4

Groves, Tenisha Burgos, Jason Grala, Kathleen Tawney, Curtis Harr, Cindy Prince, Paul Gustafson, France[s] Gammell Roach, William Picotte, Phillip Young, Jesse Powell, Alena Farrell, Janne Rice, Robert Rice, Stacey Nickell, and Carol Ann Kashishian, on behalf of themselves and all others similarly situated, bring a class action arising out of Defendants' nearly "eight-year long conspiracy to fix, raise, maintain, and/or stabilize prices, and allocate the market and customers in the United States for Instrument Panel Clusters."  (Doc. No. 33 at ¶ 1).

Both Automobile Dealer Plaintiffs and End-Payor Plaintiffs bring their actions under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). They also assert claims for actual and exemplary damages pursuant to state antitrust, consumer protection, and unjust enrichment laws, and seek to obtain restitution, recover damages, and secure other relief against Defendants for violations of the laws of various states.  Both groups obtained IPCs as a result of buying or leasing vehicles or purchasing stand-alone IPCs for repair purposes.

Defendants are manufacturers, marketers, and sellers of Instrument Panel Clusters ("IPCs"), which are the "mounted array of instruments and gauges housed in front of the driver of an automobile."  (Doc. No. 30 at ¶¶ 3, 4; Doc. No. 33 at ¶¶ 2, 4). Indirect Purchaser Plaintiffs identify several groups of Defendants:  the Yazaki group (Doc. No. 30 at ¶¶ 103-105; Doc. No. 33 at ¶¶ 65-67), which includes Yazaki Corporation and Yazaki North America, Inc., the Denso group (Doc. No. 30 at ¶¶ 110-113; Doc. No. 33 at ¶¶ 68-70), which includes Denso Corporation and Denso International America, Inc., and the Nippon group (Doc. No. 30 at ¶¶ 106-109; Doc. No.

33 at ¶¶ 71-74), which includes Nippon Seki Co., Ltd, N.S. International, Ltd, and New Sabina Industries, Inc.  IPPs include allegations about Defendants' size and global sales.  (Doc. No. 30 at ¶¶ 121-123; Doc. No. 33 at ¶¶ 84-86).  For example, Denso is the world's largest supplier of IPCs; in the fiscal year ending in 2011, Nippon sold $1.48 billion IPCs globally; Yazaki is among the largest supplier of automotive parts and deals with many car makers.  (Id.)

The investigation into antitrust violations originated in Europe with a complaint filed by several European OEMs.  (Doc. No. 30 at ¶ 136; Doc. No. 33 at ¶ 95).  In February 2010 and June 2010, the EC conducted raids in search of evidence that antitrust rules prohibiting cartels had been violated.  (Doc. No. 30 at ¶ 137; Doc. No. 33 at ¶ 96).

In addition to the European investigations, the Fair Trade Commission raided offices in Tokyo in February 2010, searching for evidence of collusion in the industry dating back to 2003.  (Doc. No. 33 at ¶ 97).  Also in February 2010, the FBI raided several Detroit area businesses as part of an antitrust investigation.

Eventually, Yazaki paid $470 million for its anticompetitive conduct in the auto parts market, including IPCs; and one of its employees pleaded guilty to participating in a conspiracy to fix prices, rig bids, and allocate market share as to IPCs.  (Doc. No. 30 at ¶¶ 152, 154, 160; Doc. No. 33 at ¶¶ 101-102).  Nippon also pleaded guilty to participating in the same conduct and paid a $1 million fine.  (Doc. No. 30 at ¶¶ 156, 158; Doc. No. 33 at ¶¶ 103-104). Further, Denso pleaded guilty and paid $78 million for similar antitrust conduct involving two different component parts.  (Doc. No. 30 at ¶ 164; Doc. No. 33 at ¶ 107).  In addition, IPPs allege that, in all likelihood, there is a

6

cooperating party accepted into the Department of Justice's (DOJ) amnesty program, which would result in no criminal charges against the accepted applicant. (Doc. No. 33 at ¶ 106).

The IPPs allege that they were injured because some portion of an overcharge resulting from the conspiracy was passed through the distribution chain to them. (Doc. No. 30 at ¶¶ 186- 189, 195; Doc. No. 33 at ¶¶ 132-133). ADPs purchased Instrument Panel Clusters indirectly from one or more of the Defendants when they purchased new vehicles to sell or lease to consumers or when they purchased replacement IPCs. (Doc. No. 30 at ¶ 124; Doc. No. 33 at ¶ 133).

Indirect Purchaser Plaintiffs include allegations describing the structure of the IPC market and those factors that render the market conducive to price-fixing, including a highly concentrated market, high barriers to entry, and inelasticity of demand for IPCs. (Doc. No. 30 at ¶¶ 108-110, 130-34; Doc. No. 33 at ¶¶ 87-90, 91-93). In addition, Denso and Yazaki own a number of patents for component parts of IPCs, and those "patents place a significant and costly burden on potential new entrants, who must avoid infringing on the patents when entering the market with a new product." (Doc. No. 33 at ¶ 90).

Based on these allegations, IPPs advance federal and state law claims. In their Motion to Dismiss End-Payors' and Automobile Dealers' complaints in their entirety, Defendants[1] challenge the sufficiency of the complaints, standing, and whether the Indirect Purchaser Plaintiffs can bring claims under the antitrust laws, the consumer

---

[1]Nippon Defendants have reached a preliminary settlement with IPPs.

protection laws, and the unjust enrichment laws of various states.

## III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint when it fails "to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains" enough facts to state a claim to relief that is plausible on its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' "  Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Under Iqbal, a civil complaint will only survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. . . .  Exactly how implausible is 'implausible' remains to be seen, as such a malleable standard will have to be worked out in practice."  Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629-630 (6th Cir. 2009).

## IV.  ANALYSIS

Because the same arguments were raised and addressed in the Court's prior ruling on a motion to dismiss the wire harness indirect purchaser plaintiffs' complaints, the Court relies on the analysis from the opinion to the extent that no distinction

8

between the two cases is needed.

### A. Sufficiency of the Antitrust Allegations

Since February 2010, the FBI, European Commission, and the Japanese Fair Trade Commission have been investigating a conspiracy involving automotive parts. (Doc. No. 30 at ¶ 7). As a result of the investigation, Yazaki Corporation and four of its executives agreed to plead guilty to participating in a conspiracy to fix prices and rig bids of IPCs from as early as December 2002 and continuing through at least February 2010. (Doc. No. 33 at ¶¶ 108, 156). Yazaki paid a $470 million fine related to its participation in three separate price-fixing and bid-rigging conspiracies, one of which is the IPC conspiracy. (Doc. No. 30 at ¶¶ 8, 154, 160; Doc. No. 33 at ¶¶ 101-102). Nippon Seiki agreed to plead guilty to participating in a conspiracy to fix prices and rig bids of IPCs from at least April 2008 until at least February 2010, and agreed to pay a $1 million fine. (Doc. No. 30 at ¶¶ 10, 156, 158; Doc. No. 33 at ¶¶ 103-104). Both Yazaki and Nippon Seiki agreed to assist the DOJ in the ongoing investigation. Although Denso did not plead guilty to a conspiracy involving IPCs, it did plead guilty to conduct involving other component parts and paid a $467 million fine. (Doc. No. 30 at ¶ 164; Doc. No. 33 at ¶ 107). The conduct is relevant to support the existence of the IPC conspiracy. For example, in In re Flash Memory Antitrust Litig., 643 F. Supp. 2d 1133, 1149 (N.D. Cal. 2009), the court addressed how an earlier conspiracy might create an inference strengthening the existence of a latter conspiracy:

> In United States v. Andreas, 216 F.3d 645 (7th Cir. 2000), the court recognized that evidence concerning a prior conspiracy may be relevant and admissible to show the background and development of a current conspiracy. In Andreas, the court addressed a claim that there was a conspiracy to fix prices and control the output of Lysine, an amino acid.

9

On appeal, the court rejected defendants challenge to the admissibility of evidence concerning a similar scheme involving the related market for citric acid. The court found that there was evidence that the citric acid scheme 'provided the blueprint for and motivating force behind the nascent lysine scheme,' and thus, was admissible to provide context as to how the lysine conspiracy operated. Id. at 665; see also High Fructose, 295 F.3d at 661 (same).

Id.; In re Static Random Access Memory (SRAM) Antitrust Litig., 580 F. Supp. 2d 896, 903 (N.D. Cal. 2008) (recognizing that guilty pleas in the earlier litigation did not support the existence of the second conspiracy on their own, but finding the guilty pleas did "support an inference of a conspiracy in the related industry").

In addition to the allegations regarding Defendants that pleaded guilty, IPPs describe specific transactions involving Defendants' collusion in responding to Requests for Quotations ("RFQ") from particular Original Equipment Manufacturers and detail the who, what, where, and when associated with those RFQs. (Doc. No. 30 at ¶¶ 145-151; Doc. No. 33 ¶¶ at 113-118). IPPs allege that the structure of the market is highly concentrated, with high barriers to entry. (Doc. No. 30 at ¶¶ 133-134, 108-110; Doc. No. 33 at ¶¶ 87-90). They allege the demand for IPCs is inelastic (Doc. No. 30 at ¶¶ 130-132; Doc. No. 33 at ¶¶ 91-93).

Although Defendants raise the absence of market share allegations to distinguish these complaints from the allegations advanced in the wire harness complaints, the omission does not require dismissal. The complaints do allege that Denso was the largest player in the IPC market. More importantly, in looking beyond each allegation, standing alone, to the guilty pleas, the Court finds that the complaints allege an express agreement existed to fix prices and allocate customers in a market with conditions ripe for conspiratorial conduct. The factual allegations create "a

10

reasonable expectation that discovery will reveal evidence of illegal agreement" beyond those parties that have pleaded guilty and beyond the extent admitted by some Defendants.  Twombly, 550 U.S. at 556. Accord In re Polyurethane Foam Antitrust Litig., 799 F. Supp. 2d 777, 782 (N.D. Ohio 2011) (relying on "specific admissions" made during a governmental investigation that supported the "existence of a conspiratorial agreement" as opposed to government investigations coupled with parallel conduct).  The number of Original Equipment Manufacturers identified as targets in the guilty pleas does not act as a limit on the scope of the conspiracy, particularly before discovery.  IPPs allege that Defendants supplied other OEMs.  (Doc. No. 30 at ¶¶ 121-133; Doc. No. 33 at ¶¶ 82).  The Court finds that the Yazaki and Nippon guilty pleas provide an ample basis for finding the conspiracy alleged here plausible.

Moreover, even in the absence of market share allegations, the Court is mindful of the Statement of William J. Baer, Assistant Attorney General, Antitrust Division, and Ronald T. Hosko, Assistant Director Criminal Investigative Division, Federal Bureau of Investigation, before the Subcommittee on Antitrust, Competition Policy and Consumer Rights Committee on the Judiciary, United States Senate Hearing entitled, "Cartel Prosecution:  Stopping Price Fixers and Protecting Consumers."  The Court has taken judicial notice of the Statement, which was presented on November 14, 2013, the day after oral argument on this motion.  (See Doc. No. 75 in 12-202).  The Statement reflects the existence of a broad industry-wide conspiracy in the auto parts market such that the absence of any allegation regarding Defendants' market shares does not undermine the sufficiency of the complaint.  See Watson Carpet & Floor Covering, Inc.

11

v. Mohawk Indus., Inc., 648 F.3d 452, 454-55 (6th Cir. 2011) (observing that when "a complaint specifically alleges an express agreement to restrain trade and conduct by defendants consistent with the agreement, a defendant cannot prevail at the pleading stage by offering alternative explanations for the allegedly unlawful behavior").

Accordingly, the Court denies Defendants' request to dismiss the complaints based upon the sufficiency of the allegations and considers Defendants' argument that constitutional standing is lacking.

### B. Constitutional Standing

Here the parties dispute whether IPPs have satisfied the constitutional requirement; specifically, whether each plaintiff alleged a "personal injury fairly traceable to the defendant's allegedly unlawful conduct" that is "likely to be redressed by the requested relief." Allen v. Wright, 268 U.S. 747, 751 (1984).   Defendants assert that the standing requirement is not satisfied under any state law invoked by IPPs because they have not alleged facts to establish that they suffered an injury-in-fact and that IPPs lack standing to proceed in states where no plaintiff resides.  The Court addresses the arguments below.

### 1. Injury-in-fact

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" National Rifle Ass'n of Am. v. Magaw, 132 F.3d 272, 279 (6th Cir. 1997).  The "requirement limits the Court's authority to legal issues 'which are traditionally thought to be capable of resolution through judicial process,' " Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich., 470 F.3d 286, 291 (6th Cir.

12

2006) <u>overruled on other grounds</u> as recognized by <u>Davis v. Prison Health Servs.</u>, 679

F.3d 433 (6th Cir. 2012) (citing <u>Owen of Georgia, Inc. v. Shelby Cnty.</u>, 648 F.2d 1084,

1089 (6th Cir. 1981)), a limitation that insures "that the litigants possess 'a personal

stake in the outcome of the controversy.'" <u>Id.</u> (citing <u>Baker v. Carr</u>, 369 U.S. 186, 208

(1962)).

To demonstrate Article III standing, a plaintiff must first allege that he has

suffered an injury that is (a) concrete and particularized and (b) actual or imminent,

rather than conjectural or hypothetical. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555,

560 (1992). Second, the alleged injury must be fairly traceable to the defendant's

conduct, and not the result of the independent action of a third party. <u>Id.</u> Third, the

plaintiff must allege that a favorable federal court decision is likely to redress the alleged

injury. <u>Id.</u> at 561.

Because ADPs and EPPs are indirect purchasers, their complaints must include

two allegations: (1) Defendants overcharged the direct purchasers; and (2) some or all

of the overcharge was passed on to them through each of the various intermediate

levels of the distribution chain. <u>See</u> <u>In re Graphics Processing Units Antitrust Litig.</u>, 253

F.R.D. 478, 502 (N.D. Cal. 2008) ("<u>In re GPU</u>") (observing that "indirect purchasers

must prove that an overcharge was levied on direct purchaser of the defendants'

products, who then passed all or some of that overcharge through to the indirect

purchasers"); <u>D.R. Ward Constr., Co. v. Rohm & Haas Co.</u>, 470 F. Supp. 2d 485, 492-

93 (E.D. Pa. 2006) (finding that the plaintiffs' allegations "that they paid inflated prices

for products with plastics additives due to an overcharge on plastics additives which

was passed on to them from the intervening links within the distribution chain, that

13

plaintiffs' overpayment for products containing plastics additives was caused by the conspiracy among defendants to charge inflated prices for plastics additives, and that judicial relief will compensate plaintiffs for these injuries, restoring plaintiffs to the position they were in prior to the price-fixing scheme" satisfied standing).

The allegations in the complaints satisfy IPPs' pleading burden.  EPPs have alleged that they have purchased indirectly from one or more of Defendants.  (Doc. No. 33 at ¶¶ 20-64).  ADPs have alleged the brands of vehicles they sell and that each is manufactured by an OEM supplied by one or more of the Defendants.  The same is true of replacement IPCs.  (Doc. No. 30 at ¶¶ 119, 121-123).  IPPs have alleged that Defendants caused them economic injury because the overcharges affected the price of replacement parts.  (Doc. No. 30 at ¶ 125; Doc. No. 33 at ¶¶ 130-134).   EPPs allege that the IPCs are "identifiable, discrete physical products that remain essentially unchanged when incorporated into a vehicle.  As a result Instrument Panel Clusters follow a traceable physical chain of distribution from Defendants to Plaintiffs and members of the Classes, and any cost attributable to Instrument Panel Clusters can be traced through the chain of distribution to Plaintiffs and members of the Classes."  (See e.g. Doc. No. 33 at ¶ 132).  As the IPCs are traced through the supply chain, the price changes can be traced to show the prices paid by the direct purchasers and how the prices paid by the indirect purchasers of new motor vehicles are changed.  (See Doc. No. 33 at ¶ 133).  In addition, IPPs allege that the economic harm can be quantified.  (See Doc. No. 33 at ¶ 139).

The cases cited by Defendants to support their position that Indirect Purchaser Plaintiffs have not alleged that they suffered an actual injury are distinguishable.  For

14

example, in contrast to the IPPs' complaints, in In re Ductile Iron Pipe Fittings (DIPF) Direct Purchaser Antitrust Litig., No. 12-169, 2013 WL 1145540 at * 5 (D. N.J. Mar. 18, 2013), the plaintiffs never alleged that they purchased the price-fixed product from a defendant involved in each conspiracy during the class period.  In contrast, here ADPs and EPPs alleged that they absorbed some portion of the price increase caused by Defendants' price-fixing conspiracy.  (See Doc. No. 30 in 12-202 at ¶¶ 170, 195-96; and Doc. No. 33 in 12-203 at ¶¶ 130, 133-139).  Likewise, in Nat'l ATM Council, Inc. v. Visa Inc., 922 F.Supp. 2d 73 (D. D.C. 2013), the plaintiff consumers were not indirect purchasers of price-fixed component parts.

In sum, the Court finds IPPs have meet their pleading burden.  See In re Processed Egg Prod. Antitrust Litig., 851 F. Supp. 2d 867, 887 n.15 (E.D. Pa. 2012) (addressing the indirect purchaser plaintiffs' allegation that they paid supracompetitive prices for shell eggs and egg products).

## 2.  Residency

The parties disagree as to whether Indirect Purchaser Plaintiffs have standing to pursue claims in states where they do not reside.  Moreover, Defendants contend that IPPs failed to allege that they made IPC purchases in several states and therefore suffered no injury in those states.  According to Defendants, no Automobile Dealer Plaintiff resides in or suffered an injury in North Dakota; no End-Payor Plaintiff resides in or suffered an injury in the District of Columbia.   Defendants rely on case law from this district to support their position that IPPs may not proceed in any state without a resident plaintiff.  See In re Refrigerant Compressors Antitrust Litigation, No. 09-md-02042, 2012 WL 2917365 (E.D. Mich. July 17, 2012) (holding that the antitrust

15

class action plaintiffs had no standing to sue in states where no would-be representative of the plaintiff class lived or allegedly was injured) (citing In re Packaged Ice Antitrust Litig., 779 F. Supp. 2d 657 (E.D. Mich. 2011)).

As this Court recognized in the wire harness case, although standing generally is determined at the outset of a case, see Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC, 433 F.3d 181, 197-98 (2d Cir. 2005), exceptions exist.  See Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999); Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 612 (1997) (postponing the standing determination until after a class certification ruling because the certification issues are "logically antecedent to Article III concerns").  The Sixth Circuit has not decided the impact, if any, Ortiz and Amchem create in the context of an indirect purchaser antitrust class action; however, it has applied the same rationale to an ERISA class action law suit.  See Fallick v. Nationwide Ins. Mut. Co., 162 F.3d 410 (6th Cir. 1998).  This Court adopted the rationale in the wire harness case and deferred a decision on standing until the class certification stage of the proceedings.  Accord In re Polyurethane Foam Antitrust Litig., 799 F. Supp. 2d 777, 806 (N.D. Ohio 2011) (because "the supposed standing deficiencies. . .arise because the [i]ndirect [p]urchaser [p]laintiffs invoke state antitrust and consumer protection statutes for each state from which putative class members are drawn," the first step is to "determine whether the [i]ndirect [p]urchaser [p]laintiffs may, as class representatives, advance their state-law claims at class certification").

Defendants ask the Court to reach a different conclusion, but the Court declines to do so.  Indirect Purchaser Plaintiffs allege injury based on price-fixing, bid-rigging, and customer allocation and seek relief for absent class members under the antitrust

16

and consumer protection statutes of other states as well as common law for unjust enrichment.  The Court recognizes this approach permits the IPPs to engage in discovery in the absence of absolute certainty that any individual suffered an injury under those laws.  Nevertheless, the nature of the claims advanced here when considered in light of the guilty pleas and the statement made by Baer, minimize the need for absolute certainty.  Consequently, the Court will address the standing issues in the context of class certification, and denies Defendants' request to dismiss ADPs' claim brought under the laws of North Dakota, and EPPs' claim under the District of Columbia.

In sum, the Court finds that IPPs have standing to proceed with their state law claims.  Accordingly, the Court considers Defendants' challenge to the viability of the state law claims on other grounds.

### C. Availability of Relief For Antitrust Claims under State Law

Automobile Dealer Plaintiffs advance state antitrust claims under the laws of Arizona, California, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and the District of Colombia.  End-Payor Plaintiffs bring antitrust claims under the same state laws, but also include Massachusetts.  Defendants raise several grounds for dismissal, including standing for component parts purchasers, statute of limitations, the sufficiency of the nexus between conduct and interstate commerce, and availability of class action.  Each is addressed below.

### 1.  Antitrust Standing for Component Parts Purchasers

17

In  response to the prohibition against antitrust actions by indirect purchasers set forth by the Supreme Court in Illinois Brick Co. v. Illiniois, 431 U.S. 720 (1977), many states enacted repealer provisions, allowing state actions for indirect purchasers.  In California v. ARC Am. Corp., 490 U.S. 93, 105-06 (1989), the Supreme Court held that federal law does not preempt state indirect purchaser statutes.

Nevertheless, courts are required to determine whether a particular plaintiff is a proper party to bring a private antitrust action.  NicSand, Inc. v. 3M Co., 507 F.3d 442, 450 (6th Cir. 2007) (observing that antitrust claimant must show more than mere "injury causally linked" to a competitive practice).   In its decision in Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 535 (1983) ("AGC"), the Supreme Court interpreted the Clayton Act provision permitting recovery by "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws".   The Court concluded that even when a plaintiff plausibly alleges an injury-in-fact sufficient for constitutional standing, the plaintiff still must establish antitrust standing.  "It is reasonable to assume that Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property."  Id. (quoting Blue Shield of Virginia, Inc. v. McCready, 457 U.S. 465, 477 (1982)).

In AGC, the Supreme Court articulated a number of factors that courts should consider in analyzing the relationship between a plaintiff's harm and a defendant's wrongdoing:  (1) the causal connection between the violation and the harm, and whether the harm was intended; (2) the nature of injury and whether it was one Congress sought to redress; (3) the directness of the injury, and whether damages are

18

speculative; (4) the risk of duplicate recovery or complexity of apportioning damage; and (5) the existence of more direct victims.  AGC, 459 U.S. at 537-45.  A plaintiff need not prevail on every factor; instead, the courts balance the factors, "giving great weight to the nature of the plaintiff's alleged injury."  Id.

This Court concluded in the wire harness cases that the issue of applicability of AGC is one that is governed by state law because this Court is sitting in diversity.  Erie R.R. v. Tompkins, 304 U.S. 64 (1938).  Accordingly, the substantive law of the state's highest court governs.  Id.  Where a clear rule of law cannot be gleaned from the state's highest court, the duty of this court is to "ascertain from all available data what the state law is and apply it."  Bailey v. V & O Press Co., 770 F.2d 601, 604 (6th Cir. 1985).

Defendants contend that the antitrust laws of twenty-six jurisdictions invoked by IPPs either apply the ACG factors, look to federal law to interpret their state statutes, or apply a similar remoteness analysis to state antitrust clams.  The Court agrees. Because there is no material distinction between the allegations made in the wire harness case and those allegations made relative to IPCs, the Court finds no reason to alter the conclusion it reached in resolving this issue in the wire harness case. Consequently, even if AGC applies, the pleadings here are sufficient.  The AGC factors do not undermine standing, regardless of whether those factors are mandatory or permissive.

Notably, the Court finds the first factor, whether IPPs suffered an antitrust injury, satisfied because even though IPPs may not be direct participants in the IPC market, they purchased vehicles containing IPCs or as replacement parts.  See In re TFT-LCD (Flat Panel) Antitrust Litig., 586 F. Supp. 2d 1109, 1121 (N.D. Ca. 2008) ("In re Flat

Panel") (citing <u>D.R. Ward Constr. Co. v. Rohm & Haas Co.</u>, 470 F. Supp. 2d 485, 491 (E.D. Pa. 2006) (finding standing where "plaintiffs allege that they paid an inflated price for plastics additives due to [the] defendants' price-fixing agreement, thereby implying that the direct harm of the price-fixing conspiracy was passed through the stream of commerce to them, purchasers of products containing plastics additives"). Here, as was the case in <u>In re (Flat Panel)</u>, IPPs have advanced allegations that the markets are inextricably linked and intertwined. 586 F. Supp. 2d at 1123.

Specifically, IPPs have alleged that the markets for IPCs and cars are inextricably intertwined, that the demand for cars creates the demand for IPCs, that the IPCs must be inserted into vehicles to serve a function, that IPCs remain identifiable, discrete physical products, unchanged by the manufacturing process or incorporation into vehicles, that IPCs follow a traceable physical chain, and that their prices can be traced through the chain of distribution. (<u>See</u> Doc. No. 30 at ¶¶ 186-193; Doc. No. 33 at ¶¶ 130-137). IPCs have part numbers that enable tracking, removal and replacement, and their sole purpose is to be inserted into a vehicle and serve as a source of information for the driver. (<u>Id.</u>) These allegations meet IPPs' pleading burden to show the harm in the market results from Defendants' antitrust violations. The Court's conclusion is not altered by IPPs' status relative to market participation. Standing under antitrust law can be established even where the market participant test is blurry. <u>D.R. Ward Constr. Co.</u>, 470 F. Supp. 2d at 502-502; <u>In re Flat Panel</u>, 586 F. Supp. 2d at 1123.

Likewise, the directness of the injury factor is satisfied here, and the Court rejects Defendants' assertion that the distribution chain is so complex and the factors affecting

prices paid by IPPs too numerous to satisfy the pleading requirements.  Because IPPs asserted that "the cost of the component was traceable through the product distribution chain," they have alleged a chain of causation (See e.g. Doc. No. 30 at ¶¶ 187, 189; Doc. No. 33 at ¶¶ 132-33).  Therefore, according to IPPs, they can trace overcharges through the distribution chain, and this AGC factor is satisfied.  In re Flash Memory Antitrust Litig., 643 F. Supp. 2d 1133, 1155 (N.D. Cal. 2009).

Next, the Court considers whether the harm alleged is too speculative.  IPPs have alleged that the component parts remain separate and traceable, allegations that satisfy their burden relative to the speculative nature of damages.  (Doc. No. 30 at ¶ ¶ 187, 191; Doc. No. 33 at ¶¶ 130-137). In re Flash Memory Antitrust Litig., 643 F. Supp. 2d at 1155 (citation omitted); In re Graphics Processing Units Antitrust Litig., 540 F. Supp. 2d 1085, 1098 (N.D. Calif. Nov. 7, 2007) (In re GPU II).

Lastly, the Court finds that the existence of Original Equipment Manufacturers does not render the IPPs' claims ripe for duplicative recovery.  Here, IPPs have indicated that the alleged overcharges are distinct and traceable.  Other courts have recognized that such allegations lessen the risk of duplicative recovery.  See  In re Flash Memory, 643 F. Supp. 2d at 1156 (citing In re Flat Panel, 586 F.Supp.2d at 1124; In re GPU II, 540 F.Supp.2d at 1098).  Although OEMs also purchased directly from Defendants, they have not brought IPC claims.  Moreover, in this case, IPPs bring their claims against Defendants that have pleaded guilty to antitrust conduct.

In sum, the Court is satisfied that the AGC factors do not undermine standing, and considers whether the statutes of limitations of various states bar the claims brought under the laws of those states.

21

## 2.  State statutes of limitations

The limitations period applicable to each state antitrust, consumer protection, and unjust enrichment claim governs the timeliness of IPPs causes of action.  According to Defendants, the applicable periods range from two-to-six years.  Here, the first end-payor plaintiff filed a complaint on January 31, 2012.  Wilson v. Yazaki Corp., No. 12-CV-10406 (E. D. Mich. Jan. 31, 2012).  The first auto dealer plaintiff filed a complaint against Yazaki on March 15, 2012.  Martens Cars of Wash., Inc. v. Yazaki Corp., Case. No. 12-CV-11156 (E.D. Mich. March 15, 2012).  Denso and Nippon Seiki were named as defendants on January 15, 2013.   Without question, IPPs reach beyond the time limitation inasmuch as the conspiracy is alleged to have commenced as early as December 2002.  Nevertheless, IPPs allege that their claims are timely because they did not and could not discover their claims until January 2012, when the DOJ announced Yazaki's anticipated guilty plea.  (Doc. No. 30 at ¶¶ 198-212; Doc. No. 33 at ¶¶ 141-152).  Until that time, there was no information in the public domain.  (Id. at ¶ 144).  In the alternative, IPPs assert that the doctrine of fraudulent concealment tolled the statute of limitations because they were unaware that they were paying supracompetitive prices for IPCs.  (Id. at ¶ 147).

Whether the claims reaching back farther than the applicable statute of limitation are barred turns on whether the various statutes are tolled by the fraudulent concealment doctrine.  The parties agree that IPPs must allege wrongful concealment of their actions by Defendants; failure of IPPs to discover the operative facts that are the basis of their causes of action within the limitations period; and IPPs' due diligence until discovery of the facts.  Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 394

22

(6th Cir. 1975).  A plaintiff must plead the factual allegations underlying a claim of fraudulent concealment with particularity.  Friedman v. Estate of Presser, 929 F.2d 1151, 1160 (6th Cir.1991).

To plead fraudulent concealment, IPPs must meet each state's standard and Rule 9(b) standards as well.  According to Defendants, the states require essentially the same elements:  affirmative fraudulent conduct designed to avoid detection of the conspiracy; the exercise of due diligence by the plaintiff to uncover the claims; and lack of constructive knowledge of the facts upon which the plaintiffs rely in asserting their claims.

Defendants' guilty pleas make clear that they used code names and met at private residences or remote locations to maintain the secretive nature of their misconduct.  (Doc. No. 30 at ¶¶ 152, 154, 156, 158, 208; Doc. No. 33 at ¶¶ 101-104, 148).  In addition, IPPs allege that evidence of the conspiracy was destroyed to preserve secrecy, and communications were marked with instructions to destroy them after they were read.  (Doc. No. 30 at ¶ 209; Doc. No. 33 at ¶ 148).  EPPs allege that Defendants agreed to keep their conspiracy secret, confining the plan to a small group of higher-lever officials.  (Doc. No. 33 at ¶ at 209(b)).  They also allege that Defendants offered pretextual and false justifications for pricing increases to create the illusion of competitive pricing.  (Doc. No. 33 at ¶ 209(b)). Defendants submitted rigged bids to maintain the false impression of legitimate competition.  (Doc. No. 30 at ¶¶ 1, 6, 8, 10, 141-151, 158-60, 164-65; Doc. No. 33 at ¶¶ 101-104, 107, 108, 113-118).  See Pinney Dock & Transport Co. v. Litton Indus., Inc., 838 F. 2d 1445, 1473 (6th Cir. 1988) (cittation omitted) ("submitting prearranged losing bids. . .to give the illusion of

23

competition" constitutes an affirmative act).

Defendants further challenge the sufficiency of the allegations relative to due diligence. IPPs include allegations to demonstrate they exercised due diligence to discover their claims, claiming that until the DOJ executed its search warrant, there was no conduct that should have prompted IPPs to investigate.  IPPs allege:

> No information in the public domain was available to the Plaintiffs and the members of the Classes prior to the public announcement of Yazaki's guilty plea on January 30, 2012, that revealed sufficient information to suggest that any one of the Defendants was involved in a criminal conspiracy to price-fix and rig bids for [IPCs].  Plaintiffs and the members of the Classes had no means of obtaining any facts or information concerning any aspect of Defendants' dealing with OEMs or other direct purchasers, much less the fact that they had engaged in the combination and conspiracy alleged herein.

(Doc. No. 30 at ¶ 202; Doc. No. 33 at ¶ 144).

The Court rejects Defendants' position that the existence of a market conducive to price-fixing puts Plaintiffs on notice.  Market conditions standing alone do not put a plaintiff on notice that the prices it paid resulted from an illegal conspiracy.  In re Lithium Ion Batteries Antitrust Litig., No. 13-MD-2420, 2013 WL 309192 (N.D. Calif. Jan. 21, 2013).

### 3.  Date of enactment of statute

Defendants ask the Court to find antitrust claims brought under the laws of New Hampshire and Utah are barred because the conduct at issue occurred before the Illinois Brick repealer statutes were enacted.  Utah enacted its statute in 2006, and New Hampshire enacted its indirect purchaser statute in 2008.  The Court agrees the statutes either expressly apply prospectively or the state courts have refused to apply the statutes retroactively.  The Court considers the arguments below, but is mindful that

although a date of enactment may limit damages, it does not preclude any claim alleged here in its entirety.

### a.  Utah

The Utah legislature amended that state's antitrust laws to provide that actions "may be brought under this section regardless of whether the plaintiff dealt directly or indirectly with the defendant."  Utah Code Ann. § 76-10-918.  This statute took effect on May 1, 2006.  See Utah Const. Art. VI § 25 (unless otherwise ordered, an act of the legislature takes effect "sixty days after the adjournment of the session at which it passed").

Inasmuch as Illinois Brick was applied prior to the 2006 amendment, see e.g., Boisjoly v. Morton Thiokol, Inc., 706 F. Supp. 795, 805 (D. Utah 1988), IPPs' antitrust claim under Utah law is limited to price-fixing that occurred after the 2006 amendment.

### b.  New Hampshire

New Hampshire enacted its indirect purchaser statute effective January 1, 2008. See N.H. Rev. Stat. Ann. § 356:11. The statute operates prospectively.  Accordingly, IPPs cannot seek recovery under the New Hampshire statute for any conduct that occurred prior to January 1, 2008.

### 4.  Sufficiency of the Nexus Between Conduct and Intrastate Commerce

The parties are in agreement that the antitrust statutes of certain jurisdictions require a plaintiff to allege a nexus between a defendant's conduct and intrastate commerce, not merely boilerplate allegations.  Those jurisdictions at issue include the District of Columbia, Mississippi, Nevada, New York, North Carolina, and West Virginia.

EPPs agreed to dismissal of their antitrust claim under Massachusetts law.  The District of Columbia also requires nexus allegations.  The parties disagree as to whether the allegations in the complaints satisfy the pleading requirements.

In general, Defendants challenge the nexus based upon EPPs' failure to allege either that they were residents of the identified states and District of Columbia or that they purchased IPCs in those states where they resided.  Even if EPPs failed to allege that their purchases occurred in the jurisdictions in which they resided, the Court infers that to be the case.  EPPs' complaints, read in the light most favorable to their claims, warrants the inference even given the length of the alleged conspiracy and the opportunity to purchase vehicles in jurisdictions outside of a plaintiff's resident state.  Finally, EPPs allege that they were injured by Defendants' conspiratorial conduct because they were forced to pay inflated prices.

ADPs include businesses in each of the identified jurisdictions.  They too allege that they indirectly purchased and received IPCs and vehicles containing IPCs.  They allege they paid inflated prices.  The Court considers whether these allegations satisfy the requirement in the challenged states and the District of Columbia.

### a.  District of Columbia

EPPs allege that Defendants entered into an unlawful agreement in restraint of trade in the District of Columbia.  They allege that the conspiracy restrained, suppressed, and eliminated price competition relative to IPCs because the prices were fixed, thereby depriving "Plaintiffs and members of the Damages Class" of free and open competition.  (Doc. No. 33 at ¶ 173(a)-(c)).  They also allege the illegal conduct "substantially affected" commerce in the District.  Id.

Even though no EPP is alleged to have resided in the District, IPPs have presented authority to establish that their allegations that commerce was impacted in D.C. is sufficient.  Sun Dun, Inc. of Washington v. Coca-Cola Co., 740 F. Supp. 381, 397 (D. Md. 1990) (allowing discovery to ascertain whether an interstate link could be established even though none of the defendants, nor the plaintiff were residents or citizens of the District of Columbia).  The Court is not persuaded to the contrary by the subsequent dismissal of the claim on summary judgment.  See Sun Dun, Inc. of Washington v. Coca-Cola Co., 770 F. Supp. 285-289 (D. Md. 1991).  At this stage of the proceedings, the Court is required to draw all inferences in favor of EPPs, and they have alleged substantial effects occurred within the District.  Accord In re Digital Music Antitrust Litig., 812 F. Supp. 2d 390, 407 (S.D.N.Y. 2011).  Accordingly, the request for dismissal on this ground is denied.

### b. Mississippi

Defendants challenge both the EPPs' allegations and the ADPs' allegations relative to Mississippi's antitrust law.  Three Mississippi residents are alleged to have purchased IPCs in Mississippi indirectly from one or more Defendant.  (Doc. No. 33 at ¶¶ 39-41).  Four businesses in Mississippi allege that they purchased and received IPCs and vehicles containing IPCs at inflated prices, in Mississippi, and displayed, sold, serviced, and advertised their vehicles in Mississippi during the Class Period.  (Doc. No. 30 at ¶¶ 24-25, 88-89, 98-99, 100-101, 168-171).  ADPs allege that the prices of IPCs "were raised, fixed, maintained, and stabilized at artificially high levels through Mississippi" and that the competition for prices of IPCs was "restrained, suppressed, and eliminated throughout Mississippi."  (Doc. No. 30 at ¶ 243(a)).  Indirect Purchaser

27

Plaintiffs alleged they paid "supracompetitive, artificially inflated prices" for IPCs in Mississippi.  (Doc. No. 30 at ¶ 243(a); Doc. No. 33 at ¶ 180).

The Court finds IPPs have met the nexus pleading requirements.  See In re GPU II, 540 F. Supp. 2d at 1099 (holding that allegations that the defendants' conspiracy affected commerce within Mississippi satisfied the requirement that the majority of an antitrust conspiracy occur within the state) (citing Standard Oil Co. of Kentucky v. State, 107 Miss. 377, 65 So. 468, 471 (1914) (the defendants sold and distributed products in Mississippi), overruled in part on other grounds sub nom. Mladinich v. Kohn, 250 Miss. 138, 164 So.2d 785 (1964)).  Accordingly, the request for dismissal of this claim is denied.

### c. Nevada

Here, EPPs include a Nevada resident that is alleged to have purchased an IPC indirectly from one or more of the Defendants.  (Doc. No. 33 at ¶ 46).  Likewise, one of the ADPs is a business in Nevada that is alleged to have indirectly purchased and received IPCs and vehicles containing IPCs in Nevada, and advertised, sold and serviced vehicles in Nevada during the Class Period. (Doc. No. 30 at ¶¶ 64-65, 168-171).  ADPs also advance allegations regarding the pricing of IPCs based on the conspiracy; specifically, that prices were artificially high and price competition was restrained.  (Doc. No. 30 at ¶ 245(a)).

The allegations meet the pleading requirements relative to Nev. Rev. Stat. Ann. § 598A.060(1), which prohibits conduct that is part of a conspiracy in restraint of trade in Nevada.  See In re Flat Panel, 599 F. Supp. 2d at 1189 (finding similar allegations sufficient to state a claim under the Nevada statute).

28

### d.  New York

EPPs allege that Defendants raised and maintained IPC prices throughout New York, depriving EPPs of free and open competition, and causing EPPs to pay artificially inflated prices.  (Doc. No.  33 at ¶ 185(a)).  The allegations advanced by EPPs differ from those found lacking and insufficient under New York law.  Specifically, in H-Quotient, Inc. v. Knight Trading Grp., Inc., 03 CIV. 5889 (DAB), 2005 WL 323750 (S.D.N.Y. Feb. 9, 2005), the plaintiff included no allegations of intrastate conduct or that New York's local interests were affected by the challenged conduct.  That is not the case here because EPPs have alleged that they paid artificially high prices in New York.  Accordingly, the Court finds EPPs' pleading sufficiently states an intrastate commercial impact.

### e.  North Carolina

Pursuant to the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), N.C. Gen Stat. § 75-1 et seq, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."  To state their claim, IPPs allege that price competition was suppressed throughout North Carolina; that the prices were fixed, maintained and stabilized at artificially high levels throughout North Carolina" and that consumers were "deprived of free and open competition" and "paid supracompetitive, artificially inflated prices" for IPCs. (Doc. No. 33 at ¶ 185).  ADPs allege that the IPCs they purchased in North Carolina were manufactured by Defendants or their co-conspirators.  (Doc. No. 30 at ¶ 249).

The allegations here are similar to those advanced in In re Refrigerant

29

Compressors Antitrust Litig., 2:09-MD-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9,

2013).  The plaintiffs in that case alleged that, as a result of a conspiracy,

manufacturers paid inflated prices for compressors and the end purchasers likewise

paid inflated prices for products containing the compressors.  Id. at *19.  The court

concluded that the allegations stated "an incidental in-state injury," not a substantial in-

state injury as required by the North Carolina statute.  Id.

       This Court is not persuaded that an incidental versus a substantial in-state injury,

which is a fact-based inquiry, can be assessed at this stage of the proceedings.

Accordingly, the Court denies Defendants' request for dismissal of this claim.  These

allegations satisfy IPPs' pleading burden.  Accord In re Flonase Antitrust Litig., 692 F.

Supp. 2d 524, 540-41 (E.D. Pa. 2010) (considering whether allegations that large

amounts of product sold in North Carolina at artificially inflated prices satisfied the

substantial in-state effect required by the statute).

### f.  West Virginia

       Lastly, West Virginia antitrust law "is directed towards intrastate commerce."

State ex rel. Palumbo v. Graley's Body Shop, Inc., 425 S.E.2d 177, 183 n.11 (W. Va.

1992).  EPPs allege an impact on intrastate commerce in that "price competition was

restrained, suppressed, and eliminated throughout" the state.  (Doc. No. 33 at ¶ 193).

They further allege that they paid "supracompetitive, artificially inflated prices" within the

state.  Id.

       These allegations, read in the light most favorable to EPPs, demonstrate that

once the price-fixed products entered the state's commerce, and were purchased by

EPPs, an antitrust injury occurred.  The allegations are sufficient.

### 5. Availability of Class Action in Illinois

Defendants argue that the ADPs' claim on behalf of themselves and as representatives of classes of Illinois consumers must be dismissed. This Court agrees, Illinois does not allow an indirect purchaser plaintiff to maintain an antitrust claim as a class action. 740 Ill. Comp. Stat. §10/7(2); In re Digital Music Antitrust Litig., 812 F. Supp. 2d 390, 415-16 (2011) (dismissing putative class action under Illinois antitrust law).

In Shady Grove Orthopedic Assoc. v. Allstate Ins. Co., 559 U.S. 393, 130 S.Ct. 1431, 1445 (2010), the Supreme Court held that Rule 23 applies in federal court unless it "abridge[s], enlarge[s] or modif[ies] any substantive right" under the Rules Enabling Act, 28 U.S.C. §2072(b). Although ADPs agree that the Act bars class actions, they maintain that the bar is procedural and inapplicable in federal courts. The dispute turns on the language of the statute itself. It reads:

> Any person who has been injured in his business or property, or is threatened with such injury, by a violation of [the Illinois antitrust statute] may maintain an action in the Circuit Court for damages, or for an injunction, or both, against any person who has committed such vio-lation. . . .

> No provision of this Act shall deny any person who is an indirect purchaser the right to sue for damages. . . . Provided further that no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General, who may maintain an action parens patriae as provided in this subsection.

740 Ill. Comp. Stat. 10/7(2).

The court in In re Digital Music Antitrust Litig., 812 F. Supp. 2d 390, 416 (S.D. N.Y. 2011), considered the very argument raised here and concluded that the

31

procedure was "so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy."  The court based its conclusion on several factors:  that the procedural rule was contained in the same paragraph of the same statute as the substantive right; and that the policy judgment reflected in the statute addresses management of duplicative recovery by entrusting class actions to the attorney general.  Id.   The Court reached the same conclusion in the wire harness case.  ADPs advance no basis for this Court to conclude that its reasoning was faulty. Accordingly, the Court dismisses ADPs' antitrust claim under Illinois law.

### D.  Availability of Relief under State Consumer Protection Laws

 In their consumer protection claims, ADPs seek relief under the laws of Arkansas, California, Florida, Massachusetts, Missouri, New Mexico, New York, North Carolina, South Carolina, Vermont, and the District of Columbia.  End-Payor Plaintiffs proceed on their claims that Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts in violation of the laws of California, the District of Columbia, Florida, Hawaii, Massachusetts, Missouri, New Mexico, New York, North Carolina, Rhode Island, and Vermont.  EPPs stipulated to dismissal of their consumer protection claim under Montana law.

Defendants raise several arguments in support of dismissal, including failure to meet particular pleadings standards, failure to allege a sufficient nexus between conduct and commerce, failure to meet the definition of consumer, and state bars against class actions.  The arguments are discussed below.

### 1.  Pleading Standards

### a. Pleading Fraud with Particularity

Defendants maintain that neither ADPs nor EPPs allege fraud or deception with any particularity.  According to Defendants, at most these complaints allege that reasonable purchasers were deceived into believing they were paying competitive prices, but the complaints contain no allegations as to how the deception was perpetrated, the content of any deceptive statements, or how in the absence of any contact between the IPPs and Defendants any deceptive statements were conveyed. Further, EPPs admit that they had no direct contact or interaction with any of the Defendants and had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with OEMs or other direct purchasers.  (See Doc No. 33 at ¶ 202).  IPPs fail to identify any statement.  Based upon the allegations made and missing, Defendants conclude that the consumer protection claims under Florida law fail to meet Rule 9(b)'s requirement that a plaintiff allege "with particularity the circumstances constituting fraud or mistake."  See Fed. R. Civ. P. 9(b). Defendants cite In re Packaged Ice Antitrust Litig., 779 F. Supp. 2d 642, 665 (E.D. Mich. 2011), as support for their position that IPPs have failed to state a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204, because the allegations must be pled with the particularity required under Rule 9(b).

The Court addressed and rejected this argument in the wire harness cases, distinguishing the decision in In re Packaged Ice, which referenced three unpublished decisions in reaching its conclusion. 779 F. Supp. 2d at 665.  See Sunoptic Technologies, LLC v. Integra Luxtec, Inc., No. 08-CV-878, 2009 WL 722320 at *4 (M.D. Fla. Mar. 18, 2009); Wrestlereunion, LLC v. Live Nation Television Holdings, Inc., No.

8:07-CV-2093, 2008 WL 3048859 *3 (M.D. Fla. Aug. 4, 2008); Fla. Digital Network, Inc. v. N. Telecom, Inc., No. 6:06-CV-889, 2006 WL 2523163 *5 (M.D. Fla. Aug. 30, 2006).

This Court found more persuasive, Galstaldi v. Sunvest Communities USA, LLC, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009), in which the federal district court rejected the notion that Rule 9(b) applies to FDUTPA claims. The court observed that "FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts such as fraud, and therefore, 'the plaintiff need not prove the elements of fraud to sustain an action under the statute.'" Id. at 1058 (citations omitted). In Galstaldi, the court concluded that Rule 9(b) does not apply to FDUTPA claims; thus, its requirements cannot serve as a basis to dismiss those claims. In addition, in State, Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc., 869 So.2d 592, 598 (Fla. Dist. Ct. App. 2004), the state appellate court held that "[a] deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."

The claim here is based on price-fixing conspiratorial conduct, and reliance by IPPs is not an element. Accordingly, the Court finds that Rule(9) is inapplicable to Plaintiff's FDUTPA claims, and the claims survive.

## 2. Unconscionable Conduct/Aggravating Circumstances

Next, Defendants challenge IPPs' claims under the consumer protection statutes of Arkansas, California, and North Carolina. The arguments are addressed below.

34

### a. Arkansas

Under Arkansas law, deceptive and unconscionable trade practices are prohibited including, among other things "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." See Ark. Stat. Ann. § 4-88-107(a) (10).  To state a claim under the Arkansas Deceptive Trade Practices Act ("ADTPA"), the ADPs must allege that Defendants engaged in an "unconscionable, false, or deceptive act or practice."  In Independence City v. Pfizer, Inc., 534 F. Supp. 2d 882, 886 (E.D. Ark. 2008), aff'd 552 F.3d 659 (8th Cir. 2009), the court observed that the Arkansas Supreme Court defined an unconscionable act as one that "affronts the sense of justice, decency, or reasonableness, including acts that violate public policy or a statute."  Moreover, the ADTPA is construed liberally inasmuch as it was enacted "to protect the interest of both the consumer public and legitimate business community." Curtis Lumber Co. v. La. Pacific Corp., 618 F.3d 762, 780 (8th Cir. 2010).  See also In re Flash Memory Antitrust Litig., 643 F. Supp. 2d 1133, 1156-57 (N.D. Cal. 2009).

Here, Defendants argue that a private cause of action is available only where a plaintiff suffers "actual damage or injury," Ark. Code Ann. § 4-88-113(f) (1999), a standard that is not met when a plaintiff merely alleges that he overpaid for a product. Wallis v. Ford Motor Co., 208 S.W.3d 153, 161 (Ark. 2005) (observing that "[w]here the only alleged injury is the diminution in value of the product, a private cause of action is not cognizable under the ADTPA").  In Wallis, the plaintiff brought a claim based on a design defect, and the court was concerned with the time actual damage occurred.  It concluded that actual damage resulted when the "product actually malfunctioned or the defect has manifested itself."  Id. at 162.

35

The case is factually distinguishable and not persuasive.  In Burton v. Micron Tech., Inc., Case No. CV 2004-226-1 (Cir. Ct. 1st Div. Nov. 6, 2009), a case more analogous to the matter before this Court, a claim under the ADTPA based on the plaintiffs' allegation that they were overcharged pursuant to a conspiracy to fix prices on computer chips was allowed to proceed.  Accordingly, the Court declines to dismiss IPPs' consumer protection claim.

### b.  New Mexico

Under the law of New Mexico, unfair or deceptive trade practices as well as "unconscionable trade practices in the conduct of any trade or commerce" are prohibited.  N.M. Rev. Stat. § 57-12-2.  The statute "defines an unconscionable trade practice as 'an act or practice. . .which to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid.'"  N.M. Rev. Stat. § 57-12-2(E).

To support their claim under New Mexico's Unfair Practices Act, EPPs allege that the conspiracy resulted in artificially inflated price levels of IPCs, leading to a "gross disparity" between the value received by the New Mexico plaintiff and class and the prices paid for the IPCs. (Doc. No. 33 at ¶ 207(a) and (b)).   Defendants ask for dismissal of these state law claims, arguing that merely pleading that the price of a product was unfairly high is insufficient to state a claim under the statute.  See GPU II, 527 F. Supp. 2d at 1029-30 (finding that unconscionability requires something more than merely alleging that the price of a product was unfairly high" and dismissing price fixing claim).

36

The Court finds EPPs have satisfied their pleading obligation.  As noted by the district court in In re Flat Panel, 586 F. Supp. 2d at 1127, the defendants' reliance on In re GPU II, is misplaced.  In that case, the indirect purchasers' claims under the New Mexico statute were dismissed because the plaintiffs had not alleged that as a result of the price-fixing conduct, a "gross disparity in the value of products received and the amount that they paid for those products" existed.  Id.  See also In re Chocolate, 602 F. Supp. 2d at 586; In re New Motor Vehicles, 350 F. Supp. 2d at 196.  Accordingly, EPPs' claims conform to the pleading requirements of Rule 12(b)(6).

### c. North Carolina

The North Carolina Unfair Trade Practices Act ("UTPA"), N.C. Gen. Stat. § 75-1.1, contains broad-sweeping language that declares unlawful, "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."  Under the statute, a "conspiracy in restraint of trade or commerce in the state of North Carolina is hereby declared to be illegal."  Id.

Defendants assert that EPPs fail to state a claim under the UTPA because they did not identify any substantive impact on in-state business.  The Court disagrees.

EPPs allege that Defendants "dominated and controlled, manufactured, sold and/or distributed IPCs" in North Carolina, 207(f), and that a North Carolina resident was harmed by paying "supracompetitive, artificially inflated prices for IPCs and vehicles" in North Carolina.  (Doc. No. 30 at ¶ 52 and 186).  These allegations suffice.  Therefore, the Court denies Defendants' request for dismissal on this basis.

### 3. Nexus between Conduct and Intrastate Commerce

37

Defendants challenge claims under the consumer protection laws of California, New York, and North Carolina because the complaints lack allegations that any of the offending conduct took place within the state or had an effect on intrastate commerce in these states. The arguments are analyzed below.

### a. California

Defendants argue that ADPs and EPPs do not allege any of the challenged conduct took place in California; therefore, the claim under California law fails. The Court addressed the same argument in the wire harness cases and concluded that IPPs had satisfied their pleading obligations. In <u>Meridian Project Sys. Inc. v. Hardin Constr. Co.</u>, 404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005), the court dismissed an unfair competition claim under California law against an out-of-state defendant because "no specific intrastate misconduct" was alleged in the complaint. The dismissal in <u>Meridian</u> was warranted because the plaintiff explicitly alleged that the misconduct occurred in Illinois. Under case law from California, "claims by nonCalifornia residents where none of the alleged misconduct or injuries occurred in California" do not state a claim. <u>See Norwest Mortgage, Inc. v. Superior Court</u>, 85 Cal.Rptr.2d 18 (Cal Ct. App. 1999).

Clearly the statute does not apply to extraterritorial conduct. Here, EPPs allege that three California residents purchased IPCs indirectly from one or more Defendants. (Doc. No. 33 at ¶¶ 23-35). ADPs include businesses in California that purchased IPCs and vehicles containing IPCs at inflated prices, in California, and received them in California (Doc. No. 30 at ¶¶ 34-37, 168-171). ADPs allege that the conduct affected California commerce and consumers (Doc. No. 30 at ¶ 264(b), that the prices were fixed and competition restrained (Doc. No. 30 at ¶ 264(g)).

38

The Court fins these allegations are sufficient. Specifically, allegations of residing and making purchases of a price-fixed product in a state meets the intrastate nexus requirements.  In addition, IPPs have included allegations that anticompetitive conduct caused supracomepetitive price effects nationwide, which they assert meets the "intrastate effects" requirement.  See In re (SRAM), 580 F. Supp. 2d 896 at 905. To support their position, they cite   In re Packaged Ice, 779 F. Supp. 2d 642, 664 (E. D. Mich. 2011) (citing cases holding that nationwide price-fixing schemes sufficient to satisfy the intrastate effects element). The Court agrees that the allegations are sufficient to survive this motion.

### b.  New York

Under New York General Business Law § 349 (1984), commercial misconduct occurring within New York is prohibited. To prevail under § 349, "a plaintiff must establish three elements:  the challenged act or practice was consumer-oriented; it was misleading in a material way; and the plaintiff suffered injury as a result of the deceptive act." In re TFT-LCD (Flat Panel) Antitrust Litigation, 586 F.Supp.2d 1109, 1127 (N.D. Cal. 2008).

Defendants assert two shortcomings with regard to EPPs' New York consumer protection claim:  EPPs failed to allege misconduct occurring in New York, and failed to allege EPPs were aware of a defendant's deceptive acts.  Simply put, a plaintiff could not be deceived by an act of which he was unaware, and "[t]he transaction in which the consumer is deceived must occur in New York." Goshen v. Mut. Life Ins. Co., 774 N.E.2d 1190, 1195 (N.Y. 2002).  The Court finds neither argument persuasive.

First, although EPPs do not allege where they purchased IPCs, the EPPs include two New York residents.  As the Court previously stated, the allegations, read in the light

most favorable to EPPs, suggests that the purchases took place in New York.  EPPs allege Defendants engaged in deceptive commercial misconduct regarding the "prices at which instrument Panel Clusters were sold, distributed or obtained in New York."  (Doc. No. 33 at ¶ 207(a), 200(i)).  The allegations describe conduct occurring in New York.

Turning to the second ground for dismissal, the Court agrees with Defendants that under New York law, the challenged conduct must be consumer oriented and deceptive. As the court noted in Leider v. Ralfe, 387 F. Supp. 2d 283, 295 (S.D.N.Y. 2005) (rejecting a § 349 claim where the defendant's conduct was not secretive) (citations omitted), "anticompetitive conduct that is not premised on consumer deception is not within the ambit of the statute."   Here, however, the anticompetitive conduct is "imbued with a degree of subterfuge" which is sufficient to sustain a claim under New York law. Id. at 296.  Moreover, reliance is not an element of a claim under § 349, and the fact that EPPs did not know of the alleged antitrust conspiratorial conduct is not dispositive.  See Stutman v. Chem. Bank, 731 N.E.2d 608, 95 N.Y.2d 24, 29 (2000).  EPPs have alleged that Defendants engaged in materially deceptive conduct because they have alleged Defendants took measures to conceal their price-fixing activities.  Consequently, the § 349 claim is viable.  See In re Dynamic Random Access Memory (DRAM) Antitrust Litig., 536 F. Supp. 2d 1129, 1143-44 (N.D. Cal. 2008); In re GPU II, 527 F. Supp. 2d at 1030.

### c.  North Carolina

To bring a claim under the North Carolina Unfair Trade practices Act, a plaintiff must allege that the defendants' conduct had a substantial effect on in-state business. Merk & Co. v. Lyon, 941 F. Supp. 1443, 1463 (M.D. N.C. 1996).  Accord, Duke Energy

40

Int'l, LLC v. Napoli, 748 F. Supp. 2d 656, 677 (S.D. Tex. 2010) (holding that "[a] plaintiff who does not allege a substantial effect on in-state North Carolina operations fails to state a claim under the NCUTPA").

In the case before this Court, one of the EPPs is a North Carolina resident who claims Defendants conspired to restrain price competition throughout North Carolina; that the price of IPCs was "raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina;" that Plaintiffs paid supracompetitive prices; and that the conduct "substantially affected North Carolina commerce." (Doc. No. 33 at ¶ 186 (a), (d)).

The Court has reviewed state law and finds that price-fixing is an unfair practice under that state's law. See McDaniel v. Greensboro News Co., No. 81 Civ. 132, 1983 WL 1943, at *3 (M.D.N.C. Dec. 19, 1983) (holding that price-fixing efforts in combination with other dishonest conduct suffices under the North Carolina law). Moreover, the allegations meet the substantial effect requirement. Accordingly, Defendants' motion as to the North Carolina consumer protection law is denied. Accord In re Digital Music Antitrust Litig., 812 F. Supp. 2d 390, 410-11 (S.D.N.Y. 2011).

## 5.  Availability of Protection of Businesses

Defendants also dispute whether Automobile Dealer Plaintiffs may bring claims under the consumer protection laws of Missouri and the District of Columbia. The Court considers the parties' arguments below.

41

### a.  Missouri

Missouri law provides a private civil cause of action for persons who purchase or lease merchandise primarily for "personal, family or household purposes."  Mo. Rev. Stat. § 407.025.  Defendants successfully argued in the wire harness case that the language of the statute precludes the Automobile Dealer Plaintiffs from bringing a claim. ADPs have offered no authority from Missouri to support their expansive interpretation of the statutory language.  The Court finds no reason to reach a different conclusion here. Accordingly, the Court dismisses the ADPs' claim under the consumer protections laws of Missouri.

### b.  District of Columbia

"The purpose of the District of Columbia's consumer protection statute is not protection of "merchants in their commercial dealings with suppliers or other merchants." Ford v. ChartOne, Inc., 908 A.2d 72, 83-84 (D.C. 2006) (observing that the District of Columbia Consumer Protection Procedures Act polices conduct arising out of a consumer-merchant dispute).   Accord Dist. Cablevision Ltd. P'ship v. Bassin, 828 A.2d 714, 717 (D.C. 2003).  ADPs have presented no reason to distinguish the allegations advanced here–that they purchased IPCs for repair and to service businesses and to sell to customers.  (Doc. No. 30 at ¶¶ 23, 102).  At oral argument, IPPs withdrew their claim; accordingly, the Court dismisses ADPs' consumer protection claim under D.C. law.

### 5.  Remoteness

Defendants' request that the Court dismiss the consumer protection claims

42

brought under Arkansas, New York, and Vermont on the basis of remoteness; specifically, that component purchasers lack consumer protection standing. The Court already rejected Defendants' remoteness argument relative to antitrust considerations under AGC. Because the allegations advanced in support of the antitrust claims support the consumer protection claim, the Court finds it unnecessary to repeat the analysis, and the request is denied.

### 6. Class Action Bar

Defendants assert that Auto Dealer Plaintiffs are barred from bringing their consumer protection claims under South Carolina law because it prohibits class actions. See South Carolina Unfair Trade Practices Act (SCUTPA"), S.C. Code § 39-5-140(a). Although the language of the statute is quite clear, the Court held in the wire harness cases that Defendants had not met their burden to show dismissal is required because the case upon which they relied was decided three years before Shady Grove, 130 S.Ct. at 1445. In contrast, here, Defendants provide support from more recent state cases to support their position. The court in Stalvey v. Am. Bank Holdings, Inc., No. 4:13-cv-714, 2013 WL 6019320 at *4 (D. S.C., Nov. 13, 2013), distinguished Shady Grove, 130 S.Ct. at 1437-38, observing that "the state procedural law at issue in Shady Grove. . .lacked a substantive component" whereas the text of the SCUTPA that prohibits class actions, is part of the "substantive portions of South Carolina law and [is] not trumped by Federal Rule of Civil Procedure 23, even in light of the Shady Grove decision." Id. See also In re MI Windows and Doors, Inc. Prods. Liability Litig., No. 2:11–cv–00167–DCN, 2012 WL 5408563 (D.S.C. Nov.6, 2012). Accordingly, the Court is persuaded by the post Shady Grove authority cited that ADPs cannot bring their SCUTPA claim on behalf of a putative

43

class.  See also In re MI Windows & Doors, Inc. Prods. Liab. Litig., MDL 2333, 2012 WL 5408563 (D.S.C. Nov. 6, 2012).  The Court is not persuaded to the contrary by In re Hydroxycut Mktg. & Sales Practices Litig., 09MD2087 BTM KSC, 2014 WL 295302 (S.D. Cal. Jan. 27, 2014), holding that Rule 23 governs, and a class action is available under South Carolina law.  The highest court in South Carolina had previously rejected class action suits for antitrust claims, and the state court believed Shady Grove would not alter the prohibition on class actions under the consumer protection code.  See Dema v. Tenet Physician Servs.-Hilton Head, Inc., 383 S.C. 115, 678 S.E.2d 430, 434 (S.C. 2009).

### 7.  Illinois Brick Bar

Defendants argue that Illinois Brick bars indirect purchasers claims in Massachusetts and Rhode Island.  See Illinois Brick Co. v. Illiniois, 431 U.S. 720 (1977). A discussion of the argument follows.

### a.  Massachusetts

Although EPPs have not opposed dismissal of their antitrust claim, they assert that they have standing to pursue claims under the consumer protection laws of the state.  In Ciardi v. F. Hoffmann-La Roche, Ltd., 762 N. E. 2d 303, 309 (Mass. 2002), the state court held that individuals that were indirect purchasers were not barred from bringing claims under the consumer protection act.  Id. at 309.  Accord In re Flonase Antitrust Litig., 692 F. Supp. 2d 524, 545 (E.D. Pa. 2010); In re Digital Music Antitrust Litig., 812 F. Supp. 2d 390, 413 n.12 (S.D. N.Y. 2011).  Accordingly, the Court finds the claim may proceed.

44

### b.  Rhode Island

The Rhode Island Unfair Trade Practice and Consumer Protection Act ("RIUTPCPA") prohibits"[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  R.I. Gen. Laws § 6-13.1-2.  The Court considered the viability of this claim in the wire harness cases and concluded that the statute protects consumers from price-fixing claims.   See In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d 538, 586 (M.D. Pa. 2009) (citing In re Flat Panel, 586 F. Supp. 2d at 1129-30; In re Dynamic Random Access Memory (DRAM) Antitrust Litig. (DRAM II), 536 F. Supp. 2d 1129, 1144-45 (N.D. Cal. 2008).  EPPs have adequately pleaded a cause of action under the RIUTPCPA, and the motion to dismiss this claim is denied.

### E.  Unjust Enrichment

Next, Defendants argue that the unjust enrichment claims cannot be maintained under any of the laws of the twenty-nine states and District of Columbia through which ADPs bring unjust enrichment claims or the thirty-one states and the District of Columbia under which EPPs proceed.  Defendants challenge whether the claims meet the various pleadings requirements of individual states.

More specifically, Defendants argue that the unjust enrichment claims must be dismissed because there are no facts pleaded to show Defendants have "unjustly" retained any benefit; because IPPs did not confer a benefit directly on Defendants; and because IPPs voluntarily entered into purchasing arrangements for IPCs or vehicles containing IPCs and received the benefit of their bargains.  Therefore, all of the unjust enrichment claims must be dismissed.

45

Before turning to the merits of Defendants' arguments on a state-by-state basis, the Court recognizes that although the particular elements of unjust enrichment vary from jurisdiction to jurisdiction, when stripped to its essence, a claim of unjust enrichment requires IPPs to allege sufficient facts to show that Defendants received a benefit and under the circumstances of the case, retention of the benefit would be unjust.  See In re Flonase II, 692 F. Supp. 2d at 524 (holding that a claim of unjust enrichment requires a plaintiff to plead two elements: "receipt of a benefit and unjust retention of the benefit at the expense of another").  In support of their unjust enrichment claims, IPPs allege that as a result of the challenged conduct, "Defendants have become unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Instrument Panel Clusters."  (Doc. No. 30 at ¶ 276; Doc. No. 33 at ¶ 213).  IPPs also allege that Defendants have benefitted from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs or the members of the Damages Class for Instrument Panel Clusters."  (Doc. No. 30 at ¶ 227; Doc. No. 33 at ¶ 214).  Although the Court agrees that these particular allegations are conclusory, the Court does not read these allegations in isolation, but in light of all of the factual allegations in the complaints. An unjust enrichment claim is used to prevent a defendant from "profit[ing] by his own wrong."  Restatement (Third) of Restitution & Unjust Enrichment § 3.  Here, IPPs allege that Defendants profited from their antitrust conspiracy.

Defendants' position is that the retention of the payment is not unjust given the consideration given by Defendants.  There is no dispute that Defendants gave IPCs to their direct customers.  (Doc. No. 30 at ¶¶ 119-20; Doc. No. 33 at ¶¶ 83).  Nevertheless,

46

the Court disagrees with Defendants that the exchange of IPCs for payment acts as a flat ban on IPPs' unjust enrichment claims. The issue is whether the transaction was unjust. IPPs allege that they overpaid for IPCs because Defendants fixed the prices of IPCs and rigged the bidding process. The facts alleged in their complaints meet their pleading burden, See In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 545 (D.N.J. 2004), inasmuch as they give rise to factual questions as to whether the consideration was reasonable, valuable or adequate. Accordingly, the Court rejects the request for dismissal of all the unjust enrichment claims on this ground.

In the alternative, Defendants assert that IPPs' claims under Florida, Kansas, Maine, Michigan, New York, North Carolina, North Dakota, South Carolina (ADP only), and Utah (the "direct benefit states") fail because a plaintiff must allege that it directly conferred some advantage on the defendant. In re Aftermarket Filters Antitrust Litig., No. 08 C 4883, 2010 WL 1416259 at *2-3 (N.D. Ill. Apr. 1, 2010). Here, as indirect purchasers, any benefit conferred by the IPPs was to others in the chain of distribution, not Defendants. (Doc. No. 30 at ¶ 124; Doc. No. 33 at ¶ 83). IPPs admit that had no direct contact with or interaction with any Defendant. (Doc. No. 30 at ¶¶ 201-201; Doc. No. 33 at ¶¶ 143-144). IPPs nevertheless assert that the "critical inquiry was not whether the benefit is conferred directly on the defendant, but whether the plaintiff can establish the relationship between his detriment and the defendant's benefit 'flow from the challenged conduct." In re Cardizem CD Antitrust Litig., 105 F. Supp. 2d 618, 669 (E.D. Mich. 2000) (Edmunds, J). This argument turns on an examination of the case law particular to the identified states. Accordingly, the Court addresses it below on a state-by-state basis.

The same state-by-state analysis is necessary to resolve Defendants' assertion that IPPs' unjust enrichment claims fail because IPPs entered into a voluntary agreement and received the benefit of their respective bargains.  Therefore, claims under Arizona, Arkansas, California, District of Columbia, Florida, Illinois, Iowa, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, and Utah are addressed below.

In addition, Defendants argue that eight states--Arizona, California, Mississippi, New York, North Dakota, South Carolina, Tennessee, and West Virginia--require special elements to be pleaded.  The Court discusses these arguments below.

### 1. Arizona

Two issues have been raised under Arizona law:  IPPs' failure to allege the absence of an adequate remedy at law, and IPPs' receipt of the benefit of their bargains.

Under Arizona law, "Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another."  Trustmark Ins. Co. v. Bank One, Ariz., NA, 48 P.3d 485, 491 (Ariz. Ct. App. 2002).  Consequently, for a plaintiff to successfully advance an unjust enrichment claim, he must allege "an enrichment, an impoverishment, a connection between the enrichment and impoverishment, the absence of justification for the enrichment and the impoverishment, and the **absence of a legal remedy**.  Id. (emphasis added).   The state court explained that "a party's right to seek unjust enrichment is not controlled by whether the party has an 'adequate' remedy at law--in the sense of providing all the relief the party desires--but

48

by whether there is a contract which governs the relationship between the parties." Id. at n.5.

Notably, Arizona courts define the adequate remedy at law element as "whether there is a contract which governs the relationship between the parties." Id. at n.2. Therefore, the existence of a contract governing the parties' relationship precludes the application of the doctrine of unjust enrichment. Brooks v. Valley Nat'l Bank, 548 P.2d 1166, 1171 (Ariz. 1976). Accord Jonovich Companies, Inc. v. City of Coolidge, 2 CA-CV 2011-0029, 2011 WL 5137180 (Ariz. Ct. App. Oct. 31, 2011).

Here the complaints make clear that the parties were not in a contractual relationship because no claim for breach of contract has been advanced. To the extent that the indirect purchasers in Arizona would be unable to disgorge Defendants' profits, they would be without an adequate legal remedy. See In re Flonase Antitrust Litig., 692 F.Supp. 2d at 543 (denying a motion to dismiss an unjust enrichment claim under Arizona law because the plaintiffs could plead alternative remedies at the pleading stage). The Court, therefore, will not dismiss the claim.

In the alternative, Defendants cite two cases from Arizona to support their argument that IPPs' receipt of IPCs requires dismissal of their unjust enrichment claims inasmuch as IPPs received the benefit of their bargains. The first, Brooks, 548 P.2d at 1166, involved dismissal of a mortgagor's unjust enrichment claim, in which he challenged bank's practice of collecting funds for taxes and insurance but using the funds for its own benefit. The second, USLife Title Co. of Ariz. v. Gutkin, 732 P.2d 579, 585 (Ariz. Ct. App. 1986), rejected the plaintiff's unjust enrichment claim where the plaintiff had already received the quitclaim deed for which it had bargained. These

49

benefit of the bargain cases involved litigants that had been in a contractual relationship that governed their conduct. That is not the case here, and the Court finds no basis to dismiss the claim based upon the authority cited.

### 2. Arkansas

Defendants rely on Frein v. Windsor Weeping Mary LP, 366 S.W.3d 367 (Ark. Cr. App. 2009), to support their assertion that IPPs' claims fail because they received the benefit of their bargain. In Frein, the court observed that "the concept of unjust enrichment has no application when an express written contract exists." Id. at 372. The relationship of the parties before the court was governed by a written contract, therefore, the doctrine of unjust enrichment did not apply. Because there is no written contract at issue in this case, Defendants' reliance on Frein is misplaced.

### 3. California

Defendants assert that California does not recognize a cause of action for unjust enrichment. There is ample case law supporting Defendants' position. See Hill v. Roll Int'l Corp., 195 Cal. App. 4th 1295, 1307, 128 Cal. Rptr. 3d 109 (2011) (noting that unjust enrichment is merely a restitution claim); Levine v. Blue Shield of Cal., 189 Cal. App. 4th 1117, 1138, 117 Cal. Rptr. 3d 262 (2010) (observing that unjust enrichment does not state a claim). Accord Fraley v. Facebook, 830 F. Supp. 2d 785, 814 (N.D. Cal. 2011) (dismissing the plaintiffs' unjust enrichment claim because it failed to state a cause of action). Because IPPs' unjust enrichment claim does not properly state an independent cause of action under California law, the Court grants Defendants' request that it be dismissed.

50

### 4.  District of Columbia

Defendants argue that IPPs' unjust enrichment claim must be dismissed because they received properly functioning IPCs at the prices they agreed to pay.  As support for their position, Defendants cite Dahlgren v. Audiovox Commc'ns Corp., No. 2002 CA 007884 B., 2012 WL 213197 (D.C. Super. Ct. Mar. 15, 2012) (alleging misrepresentations and omissions in connection with the marketing of cellular telephones).  The court in Dahlgreen dismissed the plaintiff's unjust enrichment claim for lack of standing after the plaintiff failed to produce any evidence of injury-in-fact. Specifically, the plaintiff had no evidence that the cell phones failed to function as intended or that she had heard any misrepresentations or omissions, and had received the benefit of her bargain with the phone seller.

The Court finds the analysis unpersuasive as applied to a price-fixing claim. Here, IPPs are not alleging a fraud claim and they were not in a contractual relationship with Defendants.  Accordingly, the Court denies Defendants' request for dismissal.

### 5.  Florida

The elements of a cause of action for unjust enrichment are met when: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff."  Peoples Nat'l Bank of Commerce v.

51

First Union Nat'l Bank of Fla., 667 So. 2d 876, 879 (Fla. Dis. Ct. App. 1996) (quoting

Hillman Constr. Corp. v. Wainer, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994) (citations

omitted)).

      Defendants ask the Court to dismiss IPPs' unjust enrichment claim under Florida

law because no benefit to Defendants was directly conferred, and IPPs received the

benefit of their bargain.  In Prohias v. Pfizer, Inc., 485 F. Supp. 2d 1329, 1336 (S.D. Fla.

2007) (plaintiffs filed suit over a deceptive advertising of a drug), the court rejected an

unjust enrichment theory of recovery under Florida law because the plaintiffs continued

to pay for the drug even after they had "knowledge as to its alleged limitations," thus they

were not "actually injured or aggrieved by the allegedly misleading advertisement."  Id.

The case at issue was not analogous because the plaintiffs never alleged they were

injured or aggrieved by a price-fixing conspiracy.

      Although the Court agrees with Defendants that Florida courts require "some

benefit" to flow to the defendant, it finds no requirement that the benefit be bestowed

through direct contact.  Eggs, 851 F. Supp. 2d at 929.  In the case before this Court,

even though the IPPs did not have a direct relationship with Defendants, they do allege

that they conferred a benefit on Defendants.  These allegations distinguish IPPs claim

from those advanced in Peoples Nat'l.  In that case, before Southeast Bank made two

loans to a developer, it entered into separate participation agreements with five lenders.

One of the lenders, Peoples National, filed a claim for unjust enrichment against the

other four lenders, arguing they had received overpayments.  The appellate court

affirmed the lower court's dismissal:

      Here, the plaintiff, Peoples National, could not and did not allege that it had

> directly conferred a benefit on the defendants, the other participant lenders. In actuality, if any benefit was conferred upon each participant lender in the form of overpayments, it could only have been conferred upon them by Southeast, not Peoples National. Because Peoples National failed to allege ultimate facts that support a prima facie case of unjust enrichment, the trial court properly dismissed with prejudice that count against the other participant lenders.

Id. at 879.  The case did not involve the flow of payment up a chain of distribution.  See Romano v. Motorola, Inc., No. 07-CIV-60517, 2007 WL 4199781 at *2 (S.D. Fla. Nov. 26, 2007) (refusing to dismiss a claim of unjust enrichment even though the plaintiff purchased a product through a manufacturer's "retail outfit" because the defendant still directly benefitted through profits arising out of the sale).

Here IPPs have alleged a link between their payment and Defendants' benefit, and the Court finds their pleading burden is satisfied.

### 6.  Illinois

Defendants rely on an impoundment case as support that IPPs' unjust enrichment claim under Illinois law must be dismissed because IPPs received the benefit of their bargains.  The court in La Throp v. Bell Fed. Sav. & Loan Ass'n, 68 Ill. 2d 375, 391, 370 N.E.2d 188, 195 (1977), rejected the plaintiffs' unjust enrichment claim that the defendant should pay interest on impoundment funds.  The court observed that "the absence of a provision to pay interest on the impoundment funds is equivalent to an agreement that it should not be paid."  Id. at 390.  The court further noted that when a party receives what was agreed upon there is no ground for compensation.

The facts giving rise to the unjust enrichment claim are easily distinguished.  The parties before this Court were not in a contractual relationship governing the subject

matter of the dispute.  Accordingly, the Court denies the request to dismiss this claim.

### 7.  Iowa

In <u>Smith v. Stowell</u>, 125 N.W.2d 795, 800 (Iowa 1964), the  plaintiffs sold 10 shares of bank stock to defendant and reserved an option to repurchase the shares in the future at a set price.  The plaintiffs subsequently sought to exercise the option but wanted to buy not only the ten shares, but the stock dividends as well.  The court rejected the plaintiffs' unjust enrichment argument based on the option agreement, which limited the plaintiffs' repurchase to the original ten shares.  <u>Id.</u> at 797.

Again, the Court finds the case law fails to support Defendants' position. The parties in the case cited had an express written agreement that covered the subject matter of the dispute.  Because the facts are distinguishable, the Court finds no basis to extend the decision to the case before it.

### 8.  Kansas

Under Kansas law, "the elements of an unjust enrichment claim are (1) plaintiff conferred a benefit on defendant; (2) defendant knew and received a benefit; and (3) defendant retained the benefit under circumstances that make it unjust."  <u>Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.</u>, 910 P.2d 839, 847 (Kan. 1996). Again, there is no element requiring that the benefit flow directly from the plaintiff to the defendants.

Defendants rely on <u>Spires v. Hosp. Corp. of Am.</u>, 289 F. App'x 269, 270 (10th Cir. 2008) (claiming that defendant provided inadequate medical and nursing staffing levels through its subsidiary hospitals, endangering patients at these facilities) as support for their position that an indirect unjust enrichment claim fails.  In <u>Spires</u>, the plaintiffs sought

54

to hold the defendant parent corporation liable "for the actions of subsidiary hospitals because [the defendant] developed a software system to be used by subsidiary hospitals to influence staffing levels." Id.  The staffing levels were implemented to increase profits and resulted in decreased medical care.  The district court dismissed the unjust enrichment claim based on the pleadings, noting that the plaintiffs "failed to allege that deceased family members had actually conferred a benefit" on the defendant and that acts constituting unjust enrichment were "displaced by Kansas's medical malpractice regime." Id.

The Court has reviewed the authority cited by the parties and finds Defendants read Kansas law too narrowly.  Neither Spires nor Haz-Mat is persuasive relative to the circumstances of this case, in which Defendants are alleged to have conspired to fix prices.

### 9.  Maine

Defendants argue that IPPs have failed to state a claim under Maine law for which relief can be granted.  To allege a claim for unjust enrichment, a plaintiff must prove "that (i) it conferred a benefit on the defendant; (ii) the defendant had appreciation or knowledge of the benefit; and (iii) the defendant's acceptance or retention of the benefit was under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." June Roberts Agency, Inc. v. Venture Props., Inc., 676 A.2d 46, 49 (Me. 1996).  Defendants contend that IPPs have not conferred a benefit on Defendants.

The cases cited by Defendants do not involve claims by the indirect purchasers of price-fixed component parts.  See Glenwood Farms, Inc. v. Ivey, 228 F.R.D. 47, 52 (D.

55

Me. 2005) (dismissing claim because the plaintiffs conferred no benefit on the

defendants); Rivers v. Amato, CIV. A. CV-00-131, 2001 WL 1736498 (Me. Super. June

22, 2001) (granting summary judgment on an unjust enrichment claim because it was

"based on an indirect (and speculative) theory that the plaintiff, "through his efforts. . .

conferred a benefit" on the defendant).  Therefore, the Court finds no grounds for

dismissing this claim.

### 10.  Massachusetts

Under Massachusetts law, unjust enrichment requires the plaintiff to show that the

benefit is "unjust, a quality that turns on the reasonable expectations of the parties."  See

Salamon v. Terra, 477 N.E.2d 1029 (Mass. 1985).  According to Defendants, IPPs

received functioning IPCs at the prices they agreed to pay; thus, dismissal is required.

Here, IPPs have alleged the elements, and the Court finds that the assessment

under Massachusetts law cannot be determined at this stage of the proceedings.

Accordingly, the Court denies the request for dis missal.

### 11.  Michigan

Defendants contend that the unjust enrichment claim under Michigan law must be

dismissed because IPPs did not directly confer a benefit on Defendants, and IPPs

received the benefit of the bargains.  In Russell v. Zeemering, No. 260660, 2006 WL

2382511 (Mich. Ct. App. Aug. 17, 2006) (dispute concerning the scope of an express

easement and a dispute regarding whether the plaintiffs "had notice of defendant's

claimed right to extend the easement to service additional property splits when they

purchased their respective parcels"), the court rejected an unjust enrichment claim

because a contract covered the subject matter of the dispute. The case is not

persuasive inasmuch as the parties to this litigation were not in a contractual

relationship.

Further, this Court rejects Defendants' characterization of A & M Supply Co. v.

Microsoft Corp., No. 274162, 2008 WL 540883 (Mich. Ct. App. Feb. 8, 2008), as

dispositive on the issue here. In A & M Supply Co., the state appellate court dismissed

the case for failure to prosecute. Consequently, its discussion of the merits of the

indirect purchaser plaintiffs' claim for unjust enrichment under Michigan law based upon

lack of direct contact with the defendant and lack of a direct payment or other benefit to

the defendant is dicta.

As noted by the court in In re Static Random Access Memory (SRAM) Antitrust

Litig., 07-MD-01819 CW, 2010 WL 5094289 (N.D. Cal. Dec. 8, 2010), Michigan law does

not require a benefit to be conferred directly by plaintiff to a defendant. Id. at *7 (citing

Kammer Asphalt Paving Co., Inc. v. East China Township Schools, 504 N.W.2d 635

(Mich. 1993); Morris Pumps v. Centerline Piping, Inc., 729 N.W.2d 898 (Mich. Ct. App.

2006); In re Cardizem CD Antitrust Litig., 105 F. Supp. 2d 618, 670-71 (E.D. Mich.

2008)). The Court therefore denies Defendants' request to dismiss on this ground.


### 12. Minnesota

Defendants argue that Minnesota law requires dismissal of a claim of unjust

enrichment where the plaintiff has received the benefit of his bargain. In Zinter v. Univ.

of Minnesota, 799 N.W.2d 243, 247 (Minn. Ct. App. 2011), the appellant argued that the

57

defendant was unjustly enriched because it took her tuition payment, but failed to grant her a degree. According to the appellant, she suffered decreased earning potential and did not get the benefit of her bargain. The court rejected the argument, observing that the appellant took the classes paid for, but there was no understanding that if she paid tuition she would be awarded a degree.

Again, a contract covered the parties relationship. Therefore, the case is not persuasive relative to a claim of unjust enrichment by an indirect purchaser based upon an antitrust conspiracy.

### 13. Mississippi

Mississippi courts apply the doctrine of unjust enrichment "to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another." Omnibank of Mantee v. United S. Bank, 607 So. 2d 76, 92 (Miss. 1992) (citations omitted). Nevertheless, Defendants argue that under Mississippi law, a claim of unjust enrichment requires "money be paid to another by mistake of fact." Willis v. Rehab Solutions, PLLC, 82 So. 3d 583, 588 (Miss. 2012) (appealing a jury verdict, arguing that unjust enrichment was not the proper measure of damages). In Willis, Rehab Solutions brought suit against Willis, a former employee, after it discovered its former employee had engaged in financial misconduct. Rehab Solutions wanted to recoup wages it had paid to the employee. The appellate court found no basis for an unjust enrichment claim.

> The law is clear that unjust enrichment applies when one party has
> mistakenly paid another party. Unjust enrichment applies in situations
> where no legal contract exists, and the person charged is in possession of

58

money or property which, in good conscience and justice, he or she should
not be permitted to retain, causing him or her to remit what was received. A
legal contract exists in an employment-at-will situation between the
employer and the employee. Further, without some 'special agreement'
between an employee and the employer, an employer may not recover
back wages or the equivalent thereof paid during a term of completed
employment.

Id. at 588.

Defendants read the case too broadly, and the Court declines to dismiss IPPs'

claim.

The Court further finds Defendants' benefit of the bargain argument is not

persuasive.  In Omnibank of Mantee, 607 So. 2d at 93, the court observed that there is

no right to restitution from a third party merely because he benefits from the agreement

of two others.  "[I]n the absence of some misleading or wrongful act by the third person,

the mere failure of performance by one of the contracting parties does not give rise to a

right of restitution against the third person."  Id.  The case does not address the

relationship of indirect purchasers on a price-fixing conspiracy claim, and there was no

allegation of wrongdoing by the defendant.  Therefore, the Court denies the motion to

dismiss the unjust enrichment claim under Mississippi law.


### 14. Missouri

The elements of an unjust enrichment claim are satisfied when the plaintiff shows

that (1) he conferred a benefit on the defendant; (2) the defendant appreciated the

benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or

unjust circumstances.  Hertz Corp. v. RAKS Hospitality, Inc., 196 S.W.3d 536, 543 (Mo.

59

App. E.D. 2006).  Consequently,"[t]here can be no unjust enrichment if the parties receive what they intended to obtain."  <u>Am. Standard Ins. Co. of Wisconsin v. Bracht</u>, 103 S.W.3d 281, 293 (Mo. App. S.D. 2003).  Moreover, when an express contract governs the subject matter, a claim of unjust enrichment does not apply.  <u>Farmers New World Life Ins. Co. v. Jolley</u>, 747 S.W.2d 704, 707-08 (Mo. App. W.D. 1988) (holding that plaintiff's entering into an agreement with known risks precluded recovery under an unjust enrichment claim when an anticipated contingency occurred).

The state appellate court in <u>Howard v. Turnbull</u>, 316 S.W.3d 431, 438 (Mo. Ct. App. 2010), cited examples of when the retention of a benefit by a defendant would not be inequitable.  The merits of a claim for unjust enrichment turn on the particular facts. None of the examples cited by the <u>Howard</u> court involved facts similar to those giving rise to the claims before this court.  In contrast, the allegations before this Court create an inference that retention of a benefit by Defendants would be inequitable.  Accordingly, the Court allows the claim to proceed.

### 15.  New Hampshire

Defendants assert a benefit of the bargain argument under New Hampshire law. Unjust enrichment is an equitable remedy, found where an individual receives "a benefit which would be unconscionable for him to retain."  <u>Kowalski v. Cedars of Portsmouth Condo. Assoc.</u>, 146 N.H. 130, 133, 769 A.2d 344 (2001) (quotation omitted).  To advance their benefit of the bargain argument, Defendants cite a case wherein the appellate court reversed the lower court's award of restitution to the plaintiff, a former employee of the defendant, based upon the defendant's failure to partially fund a pension for plaintiff.  The appellate court held that under New Hampshire law, a plaintiff

60

cannot use unjust enrichment to "supplant the terms of an agreement." <u>Clapp v.</u>
<u>Goffstown Sch. Dist.</u>, 977 A.2d 1021, 1025 (N.H. 2009) (citing 42 C.J.S. Implied
Contracts § 38 (2007) (noting that "unjust enrichment. . .is not a means for shifting the
risk one has assumed under contract").  Because the plaintiff had an employment
contract that governed the claim, the plaintiff was not entitled to damages under an
unjust enrichment theory.

Again, the Court finds the case is not persuasive relative to the argument
advanced and the facts and claims in this case.  Accordingly, the request for dismissal of
the unjust enrichment claim under New Hampshire law is denied.

### 16.  New Mexico

In <u>Arena Res., Inc. v. Obo, Inc.</u>, 2010-NMCA-061, 148 N.M. 483, 487, 238 P.3d
357, 361 (N.M. Ct. App. 2010), one of three owners of an oil field brought suit against the
others seeking reimbursement for redevelopment expenses.  The state court rejected the
plaintiffs claim of unjust enrichment, noting that, in general, a contract had to be enforced
as written absent "fraud, real hardship, oppression, mistake, unconscionable results, and
the other grounds of righteousness, justice and morality."  Again, the claim failed in light
of an express agreement covering the claim.  Therefore, the case cited does not support
dismissal of IPPs' unjust enrichment claim.

### 17.  New York

Defendants advance three arguments in support of dismissal:  the benefit of the
bargain, the absence of a direct benefit, and the attenuated nature of the relationship
between the parties.  Without question, in New York, the state courts reject claims for
unjust enrichment when express contracts govern the same subject matter.  <u>Vitale v.</u>

Steinberg, 307 A.D.2d 107, 111, 764 N.Y.S.2d 236 (2003).  Accord One Step Up, Ltd. v. Webster Bus. Credit Corp., 87 A.D.3d 1, 14, 925 N.Y.S.2d 61, 70 (2011).  Because the parties here were not in a contractual relationship, the cases cited as support that n the absence of a direct benefit requires dismissal of the claim, are unavailing.

The Court finds the other arguments advanced by Defendants do not require dismissal of the unjust enrichment claims.  In Sperry v. Crompton Corp., 26 A.D.3d 488, 810 N.Y.S.2d 498, 499-500 (N.Y. App. Div. 2006), the court affirmed the dismissal of an unjust enrichment claim brought by New York indirect purchasers because the alleged connection between plaintiffs and defendants was simply too attenuated.  The court did not, however, rule out such a claim.  It observed that "a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment. . . ."   Accord In re Canon Cameras, 05 CIV. 7233, 2006 WL 1751245 (S.D.N.Y. June 23, 2006) (rejecting the argument that to recover for unjust enrichment, the plaintiffs must confer a "direct benefit" on the defendant and finding a question of fact as to whether only the third-party retailers, not the defendant, received any benefit from the plaintiffs' camera purchases).

Defendants also rely on Bristol Vill., Inc. v. Louisiana-Pac. Corp., 916 F. Supp. 2d 357, 366-67 (W.D.N.Y. 2013), as support for their position.  In that case, the court dismissed an unjust enrichment claim brought by an assisted living facility, not for lack of privity, but because it found "the relationship between the parties. . .too attenuated."  Id. (citations omitted). In this case, the plaintiff had not purchased the defective TrimBoard at issue from the defendant.  It acquired the TrimBoard "either as part of its purchase of its structure or its contracting for construction services thereon."  Id.

The Court finds the relationship in the cases cited by Defendants to be more

62

attenuated than the relationship between IPPs and Defendants here.  The nature of the claim likewise distinguishes this case from those relied upon by Defendants.  Accordingly, the Court finds IPPs have satisfied their pleading burden.

### 18.  North Carolina

The North Carolina decision in Britt v. Britt, 359 S.E.2d 467, 470 (N.C. 1987), emphasizes the same rule that the parties' agreement governs whether a defendant was unjustly enriched.  Accordingly, the Court finds no grounds for dismissal of IPPs' unjust enrichment claim on the ground that IPPs received the benefit of their bargain.

In the alternative, Defendants argue that the benefit from a plaintiff to a defendant must be directly bestowed.  In Baker Constr. Co. v. City of Burlington, No. COA09-13, 2009 WL 3350747, at *1 (N.C. Ct. App. Oct. 20, 2009), the plaintiff construction company brought an unjust enrichment claim after it was not paid for utility lines it had installed on specified property.  The plaintiff filed its unjust enrichment claim against the subsequent owner of the property, a corporation, and the City of Burlington.  Id. at *2.   The appellate court rejected the plaintiff's argument relative to the subsequent owner and the City, noting that the plaintiff installed the utility lines pursuant to a contract with the corporation.  The subsequent owner had no contract with the plaintiff and purchased the property by deed resulting from a foreclosure sale of the property.  Id. at *6.  The court recognized that "[w]here a third person benefits from a contract entered into between two other persons[,] the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person."  Id. (alteration and quotation omitted).   That is not what is alleged to have happened here–a price-fixing conspiracy claim is not analogous to a claim that a third-party failed to fulfill its contractual

63

obligations.

The court also noted that to state an unjust-enrichment claim, "the benefit conferred must be conferred directly from plaintiff to defendant, not through a third party." Id. (citing Effler v. Pyles, 380 S.E.2d 149, 152 (N.C. Ct. App. 1989)).  The plaintiff did not confer a benefit directly to the subsequent owner because the subsequent owner "acquired possession of the utility lines as a result of a trustee's deed. . . ." Id. at *6.  Again, the analysis cannot be stretched to cover the allegations advanced by IPPs.

### 19. North Dakota

"The doctrine of unjust enrichment is invoked when a person has and retains money or benefits which in justice and equity belong to another."  Midland Diesel Svc. & Engine Co. v. Sivertson, 307 N.W.2d 555, 557 (N.D. 1981) (quoting Schlichenmayer v. Luithle, 221 N.W.2d 77, 83 (N.D. 1974)).  Accord Midland Diesel Serv. & Engine Co. v. Sivertson, 307 N.W.2d 555, 557 (N.D. 1981) (observing that "[i]t is sufficient if the latter has, without justification, obtained a benefit at the direct expense of the former, who then has no legal means of retrieving it").

North Dakota allows claims of unjust enrichment where five elements are met: "1. An enrichment; 2. An impoverishment; 3. A connection between the enrichment and the impoverishment; 4. Absence of a justification for the enrichment and impoverishment; and 5. An absence of a remedy provided by law."  A&A Metal Bldgs. v. I-S, Inc., 274 N.W. 2d 189 (N.D. 1978) (citation omitted). The doctrine "provides a basis for requiring restitution of benefits conferred in the absence of an expressed or implied contract." Sykeston Twp. v. Wells Cnty, 356 N.W.2d 136, 140 (N.D.1984).

64

Defendants maintain that IPPs failed to allege an absence of a justification for the enrichment.  The Court disagrees.  The complaints read in their entirety reflect IPPs' position that Defendants have been unjustly enriched through their involvement in a antitrust conspiracy.  The Court further finds that the viability of IPPs' unjust enrichment claim is not governed by Apache Corp. v. MDU Res. Grp., Inc., 603 N.W.2d 891, 895-96 (N.D. 1999).  In that case, the court was assessing the merits of an unjust enrichment claim relative to a third-party beneficiary's entitlement to enforce the defendant's contract after the defendant breached its contract. The court observed that the plaintiff's impoverishment resulted from a valid contractual arrangement so the consequences to the third-party beneficiary were not contrary to equity.  Id.

The circumstances here are vastly different, and the Court declines to dismiss IPPs' unjust enrichment claim based upon the law cited by Defendants.

### 20.  Oregon

Under Oregon law, when the parties' relationship is governed by contract, a claim of unjust enrichment fails.  See High v. Davis, 584 P.2d 725, 736 (Or. 1978) (observing that a quitclaim deed establishes the parties' agreement in a property transaction and the purchaser assumes the risk of defective title).  Consequently, when a party receives what he bargained and paid for, he is not unjustly enriched.  Id.

Again, the Court finds the case law is not applicable because the parties here were not in a contractual relationship.

### 21.  Rhode Island

 To establish a claim for unjust enrichment under the law of Rhode Island, a plaintiff must show that the defendant received compensation to which he was not

entitled.  "The equitable doctrine of unjust enrichment applies under certain circumstances 'to prevent the person from retaining a benefit received from another without appropriate payment for same.'"  Doe v. Burkland, 808 A.2d 1090, 1095 (R.I. 2002) (citing Rhode Island Hosp. Trust Co. v. The Rhode Island Covering Co., 96 R.I. 178, 179-180, 190 A.2d 219 (1963)).

Because the doctrine prevents retention of a benefit without "appropriate payment" the viability of the claim turns on the facts.  Rosetta v. Moretti, 98-89, 2005 WL 1109638 (R.I. Super. May 4, 2005).  Accordingly, the Court declines to dismiss the claim at this stage of the proceedings.

### 22.  South Carolina

In addition to direct benefit and benefit of the bargain arguments, Defendants argue that under South Carolina law, a plaintiff must allege the existence of a duty.  For this reason, ADPs' unjust enrichment claim fails.

Under South Carolina law "[a] party may be unjustly enriched when it has and retains benefits or money which in justice and equity belong to another."  Dema v. Tenet Physician Servs.--Hilton Head, Inc., 678 S.E.2d 430, 434 (S.C. 2009). To recover on the claim, a plaintiff must show: (1) a benefit conferred upon the defendant by plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for it to retain the benefit. Ellis v. Smith Grading & Paving, Inc., 366 S.E.2d 12, 15 (S.C. Ct. App. 1988).  There is no requirement to allege the existence of a duty.  Further, ADPs have alleged that they conferred a benefit to Defendants because they paid more than the true value of the IPCs as a result of Defendants' conspiracy.  At the pleading stage, the Court finds the allegations satisfy

66

the elements of South Carolina law.

Further the Court finds the allegations here distinguishable from the allegations in Myrtle Beach Hosp., Inc. v. City of Myrtle Beach, 532 S.E.2d 868, 869, 873 (S.C. 2000). In that case, the court held that the defendant was not required to pay the plaintiff hospital for medical care rendered to the city's pretrial detainees even though the defendant received an "incidental benefit in the sense that the existence of the Hospital facilitates the City's constitutional duty to ensure the detainee receives necessary medical care." Id. at 3. The benefit alleged by ADPs is not characterized as incidental, and therefore, the claim can proceed.

### 23.   South Dakota

Defendants argue that IPPs' unjust enrichment claim fails under South Dakota law because Defendants provided IPCs for the benefit they received. See Parker v. West Dakota Insurers, Inc., 605 N.W.2d 181, 187 (S.D. 2000) (former employee pursued an unjust enrichment claim to collect post-employment renewal commissions from her employer). The Court has reviewed the case law relied upon by Defendants and finds the case does not support dismissal of IPPs' claim, which does not pursue a contractually based argument for unjust enrichment.

### 24.   Tennessee

The elements of a claim for unjust enrichment under Tennessee law are set forth in Freement Indus. LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525-26 (Tenn. 2005) (reversing denial of summary judgment to defendants on indirect purchasers' unjust enrichment claim because they failed to allege exhaustion of remedies against the direct purchaser and provided only "bare allegation" that such efforts would be futile). A

67

plaintiff must demonstrate that he exhausted "all remedies against the person with whom the plaintiff enjoyed privity of contract." Id. Nevertheless, the Freement court also stated that "to maintain an action for unjust enrichment, a plaintiff is not required to exhaust all remedies against the party with whom the plaintiff is in privity if the pursuit of the remedies would be futile." Id. at 526. Notably, dismissal was at the summary judgment stage.

Moreover, in In re TFT-LCD (Flat Panel) Antitrust Litig., 599 F. Supp. 2d at 1192-93, the district court applied the futility exception in a case involving indirect purchasers advancing a price-fixing claim against the defendant-manufacturers, where there were no allegations that resellers were involved in the conspiracy. The court agreed with the plaintiffs that futility was "self-evident." Id.

Given the similarity of the allegations and claims advanced by IPPs here to those in In re Flat Panel, the Court will deny Defendants' motion to dismiss relative to the claim under Tennessee law.


### 25.  Utah

Unjust enrichment claims brought under Utah law include three elements: "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." Berrett v. Stevens, 690 P.2d 553, 557 (Utah 1984) (footnote omitted).

68

In assessing whether these elements were satisfied, the court in <u>Concrete Prods. Co., a Div. of Gibbons & Reed v. Salt Lake Cnty.</u>, 734 P.2d 910, 911 (Utah 1987), held that the defendant county had not been unjustly enriched by the plaintiff's delivery of concrete for curbs and gutters to a third-party who never paid.  After the plaintiff unsuccessfully sued a third-party, it sued the county.  The court found there was no direct benefit to the county because it raised no revenue from the products delivered; rather, it incurred additional expense for cleaning and maintain curbs and gutters with no resale value.  The court observed that retention of the materials by the defendant, therefore,  was not inequitable.

In the alternative, Defendants argue IPPs received the benefit of their bargain.  Under Utah law, a plaintiff cannot recover back money that was paid voluntarily, "with full knowledge of all of the facts, without fraud, duress, or extortion in some form."  <u>S. Title Guar. Co., Inc. v. Bethers</u>, 761 P.2d 951, 955 (Utah Ct. App. 1988) (citing 66 Am. Jur. 2d Restitution and Implied Contracts § 93 (1973)).  Therefore, when a plaintiff enters into a "transaction at arm's length and the plaintiff received what he bargained for" he cannot bring a claim for unjust enrichment.  <u>Id.</u>

The Court finds the case law is not applicable to the facts before it.  Here, IPPs allege that they had no knowledge of the antitrust conspiracy, and the Court denies Defendants' request for dismissal.

### 26.  Vermont

In <u>Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc.</u>, 537 A.2d 994, 995 (Vt. 1987) (citing <u>Morrisville Lumber Co., Inc. v. Okcuoglu</u>, 531 A.2d 887, 889 (Vt. 1987)), the court held that "retention of a benefit is not unjust where defendants have paid for it."

69

Because there was no inequity, there could be no damages.

The proper inquiry for this Court is "whether, in light of the totality of circumstances, it is against equity and good conscience to allow defendant to retain what is sought to be recovered." Legault v. Legault, 459 A.2d 980, 984 (Vt. 1983). Therefore, IPPs, who have alleged that it would be unfair for Defendants to profit from their antitrust conspiracy, have stated a claim for unjust enrichment.

### 27. West Virginia

To state a claim of unjust enrichment in West Virginia, a plaintiff must allege three elements: (1) a benefit conferred upon the [defendant], (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value. Veolia Es Special Servs., Inc. v. Techsol Chem. Co., 2007 WL 4255280 at *9 (S.D. W. Va. Nov. 30, 2007) (citation omitted). To satisfy the third element, a plaintiff must show "it would be inequitable and unconscionable to permit the party receiving [benefits] to avoid payment therefor. . . ." Realmark Devs., Inc. v. Ranson, 542 S.E.2d 880, 884-85 (W. Va. 2000).

Defendants ask the Court to dismiss the claim because IPPs have not met the pleading requirements. Specifically, IPPs have not alleged that Defendants' retention of a benefit was "inequitable and unconscionable." See Wittenberg v. First Indep. Mortg. Co., No. 3:10-CV-58, 2011 WL 1357483 at *15 (N.D. W. Va. Apr. 11, 2011) (dismissing the plaintiff's unjust enrichment claim because the conduct at issue–the securitization of the plaintiff's loan–was neither unlawful nor unauthorized).

Here, IPPs have alleged a lengthy conspiracy by Defendants to fix the prices of

70

IPCs.  The allegations, viewed in the light most favorable to IPPs, satisfy their burden.

### 28. Conclusion

In sum, the Court has reviewed the case law upon which Defendants' rely and in large measure finds it distinguishable.  In contrast to the relationships involved in the case law cited by Defendants, here the parties were not in a direct bargaining relationship.  Instead, IPPs' unjust enrichment claims arise out of the alleged antitrust violations that resulted in payment of overcharges by IPPs.  (Doc. No. 30 at ¶¶ 162, 269-70; Doc. No. 33 at ¶¶11, 214).  For the most part, the state cases cited by Defendants did not involve indirect purchasers of price-fixed products.  With the exception of California, which does not recognize a claim of unjust enrichment, the allegations in the complaints before the Court create a reasonable inference of unjustness regardless of the particularities of any state law.

### F.  Injunctive Relief

Indirect Purchaser Plaintiffs ask the Court for an injunction preventing Defendants from "continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged" in the complaint.  (Doc. No. 30, Prayer for Relief at ¶ E; Doc. No. 33, Prayer for Relief at ¶ E).  The request is authorized under the Clayton Act, which provides that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws."  15

U.S.C. § 26.

In challenging the request,  Defendants argue that the complaints lack the factual support necessary to establish a real or immediate threat of future harm.  Specifically, Defendants contend that the relief is undermined by the guilty pleas, the JFTC Orders, and the widespread publicity garnered by enforcement agency investigations since February 2010.

The Court finds the allegations in the respective complaints are sufficient, at this stage of the proceedings, to satisfy IPPs' burden to allege the existence of "some cognizable danger of recurrent violation." United States v. W. T. Grant Co., 345 U.S. 629, 633 (1953).  The purpose of an injunction is to prevent future violations. Swift & Co. v. United States, 276 U.S. 311, 326 (1928).  Speculation by  Defendants' that the orders, pleas, and publicity will prevent further misconduct fails to demonstrate the threat of future injury is implausible, particularly in light of the length of the conspiracy alleged and the market conditions.  This Court is not in a position to render an assessment that injunctive relief cannot be had at this stage of the proceedings.  Accordingly, the Defendants' request is denied.

## V.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** in part and **DENIES** in part Defendants' motion.

ADPs' antitrust claims under Illinois are **DISMISSED**.  The applicable statutes of limitation limit damages under the laws of Utah and New Hampshire.  End-Payor Plaintiffs' antitrust claims under the laws of Massachusetts are **DISMISSED**.  EPPs

72

consumer protection claim under Montana is **DISMISSED**, ADPs' South Carolina

consumer protection class action is **BARRED,** ADPs' consumer protection claims under

Missouri and the District of Columbia are **DISMISSED**.

IPPs' unjust enrichment claim under California law is **DISMISSED**.

**IT IS SO ORDERED.**

Date:   July 3, 2014                                         s/Marianne O. Battani_____
                                                            MARIANNE O. BATTANI
                                                            United States District Judge


                            <u>CERTIFICATE OF SERVICE</u>

       The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to
their respective email addresses or First Class U.S. mail to the non-ECF participants on July 3, 2014.


                                                            s/ Kay Doaks_____
                                                            Case Manager